**STATE of Missouri, Respondent,**

v.

**Jack Gene WITT, Appellant.**

No. 49897.

Supreme Court of Missouri.

Division No. 2.

Oct. 14, 1963.

Scott R. Traylor, Paul R. Coffman, Springfield, for appellant.

Thomas F. Eagleton, Atty. Gen., Louis C. DeFeo, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Judge.

Defendant was found guilty by a jury of the offenses of second degree bur-

glary and stealing; the court found that he had been convicted of a prior felony and, after overruling his motion for new trial, sentenced him to four years' imprisonment for each offense, the sentences to run concurrently. This appeal followed. No brief has been filed here for the defendant, so we consider all sufficient assignments of his motion for new trial.

The essential facts are simple; the complications arise largely on questions of the admissibility of exhibits. Maynard Moore operated the L & M Service Station in Springfield. During his absence for a few days in January 1962, the station had been left in charge of Robert Rupe and Ralph White. Various brands of cigarettes were kept for sale in the station, as was also Pepsi-Cola in a vending machine. No inventory of the cigarettes was kept. The station was closed and locked at about 8:30 p.m. on January 5, 1962; shortly before the closing Rupe had changed a tire, using a "spoon type" tire tool which belonged to Moore and was kept in the station. Everything was in order when the station was closed. White arrived there about 7:00 o'clock on the morning of January 6, and found the glass in the front door broken, the other door standing open, and the Pepsi-Cola machine "broken open" with its door "messed up." The spoon-type tire tool was gone, and the coin tray on the telephone was bent but it had not been entered.

Early on January 6, 1962, at approximately 4:15 a. m., Officer Jack Rushin of the Springfield Police Department observed a 1951 Ford being driven erratically and started following it; he checked the license number on his radio, was told that it checked out to Jack Witt, and was further told over the radio by Officer Charles Upp that he wanted to talk to Witt about a theft from a cafe; this latter message arrived about the time Rushin stopped defendant's car or almost immediately thereafter. Upp came out immediately and he and Rushin together searched defendant's car. In a hearing outside the presence of the jury it was disclosed that they found under the

front seat two tire tools (including a "spoon type" tool), "a ball bat and a Jap sword," and a carton of Winston cigarettes; on the floor they found a loaded revolver; in the glove compartment six packs of cigarettes and a pint bottle of whisky "almost consumed." At the police station they found under the mat in the trunk about $14 in small coins wrapped in a "shop towel" or "grease rag"; these two designations seem to have been used interchangeably. The trial court ruled that no reference should be made to the liquor or pistol during the trial and none was made. At the time of the search no report had been made of the filling station burglary. Officer Upp testified briefly at this hearing concerning a report of the looting of certain coin machines in a cafe, and of his reason to suspect this defendant. The tire tools and the shop towel with its contents were identified, offered and received in evidence at the trial as having been thus found in defendant's car. Defendant denied to the police all knowledge of these articles.

Officer Rushin testified (before the jury): that defendant's car was "weaving"; that he placed defendant under arrest when he stopped him "or shortly thereafter"; that his first reason for stopping the defendant was "possible intoxicated driving" or a suspicion of "drunken driving." The substance of the testimony of both officers is that at approximately the time Rushin stopped the defendant and placed him in the patrol car he got the call that defendant was a burglary or stealing suspect and thereupon held him there for Officer Upp. The arrest and this report came so close together as to constitute, actually, a single act. Officer Upp testified that he directed Rushin to place defendant under arrest "out there where he had him stopped."

It was developed further that the end of the straight tire tool or jack handle found in defendant's car fitted the "pry mark" in the door of the Pepsi-Cola machine. The Police Technician testified that from microscopic examination of these two articles he found evidence of metal and

paint specimens on the tire tool which indicated that it had been used in prying the door of the machine and that, in his opinion, it was so used. He also testified that the aluminum specimens which he thus found were different from the aluminum in hub caps. Maynard Moore definitely identified the spoon-type tire tool introduced in evidence as the one from his station, referring to specific beaten places and a mark over a letter "e," all despite a vigorous cross-examination.

The defendant did not testify. Evidence was adduced on his behalf of the following substance: that spoon-type tools were in common use and that they often show hammer marks; that there was no attempt to make casts of some tire tracks in light snow outside the L & M filling station on the morning of January 6, 1962; that the spoon-type tire tool was one which had been in the car of defendant's brother which car defendant took over on the brother's death, and later traded for the 1951 Ford; that defendant's father (who gave this latter testimony) had used the tool several times; that the straight tire tool or jack handle was from the father's jack; that defendant often let relatives and friends drive his car.

The sufficiently raised assignments of error (allowing defendant the benefit of some doubt) are, essentially: (a) that the court erred in refusing "to suppress the evidence taken from" defendant's car in the search; (b) that the court erred in permitting testimony concerning certain of the exhibits before they were introduced in evidence; (c) that the testimony of the police officers at this (second) trial was substantially different from that given at the first trial; (d) that the court erred in permitting testimony concerning items taken from defendant's car when they were not charged in the information as having been stolen, and also erred in admitting such articles in evidence; (e) that the court erred in finding that defendant was a "habitual criminal."

■ Points (b) and (c) may be disposed of very quickly. The court had the discretion to permit testimony (largely by way of identification and a showing of the circumstances) concerning certain or all of these articles in order to connect them up properly, and prior to their actual admission. No possible prejudice resulted because all the articles so questioned were later offered and received in evidence. There is nothing substantial to point (c), on its very face; any supposed differences in the testimony of witnesses as between a first and second trial go merely to the weight of their testimony, with the right accorded to develop that fact, if true, on cross-examination.

■■ Defendant's counsel moved orally to suppress the evidence of the articles taken in the search "on the ground it was taken without a proper search warrant. And on testimony he agreed to the search." Counsel did not add the objection that the search was not made in connection with a lawful arrest, but we prefer to consider the question on its merits, for that contention appears to have run through the case. Here Rushin had an entirely lawful reason for following defendant's car and for stopping it; defendant was "weaving" along the city streets at 4:15 a. m. It is a little difficult to tell at what precise moment the arrest was made, but the stopping of defendant's car, an apparently brief conversation, and the radio message from Officer Upp (to hold defendant on suspicion of burglary) were all substantially concurrent. It fairly appears that defendant was actually and formally arrested for the latter reason, although he may have been held temporarily on suspicion of drunken driving. Officer Upp who had the information about the prior suspected crime arrived before any search of the car was made and participated in it. Police officers are authorized to arrest upon reasonable cause to suspect that one is guilty of a felony, either upon their own knowledge or upon facts "communicated to them by others * * *." State v. Brown, Mo., 291 S.W.2d 615; State v. Green, Mo., 292 S.W. 2d 283; State v. Edwards, Mo., 317 S.W.

2d 441. If police officers could not thus base the existence of reasonable cause upon bona fide information communicated to them in the performance of their duties, their hands would be very effectively tied. Having made a legal arrest, the officers undoubtedly had the right to search the car. Brown, Green, Edwards, supra. We hold that the arrest and the search were legal, and that the motion to suppress was properly overruled.

■ Point (d), variously stated in the motion, essentially involves the admissibility of the articles taken from defendant's car, and of testimony concerning them. The physical exhibits (with one exception) were all identified as coming from defendant's car and to that extent no question is raised. The exception was the door from the Pepsi-Cola machine and it was identified as such by the police officer who removed it. The basic reason given for objections to the admission of these exhibits is that they were not things charged in the information to have been stolen, since the information only charged the actual theft of one "steel spoon type automobile tire tool * * *." The State has attempted in its brief to convince us that the words "goods, merchandise and other valuable things * * * constitute a charge of the theft of other articles; this argument is a distortion of the language of the indictment, and wholly fruitless. Those words were used in connection with the charge of an *intent,* namely, with intent to steal such goods, etc., whereas the actual charge of stealing clearly involves only the tire tool. However, the admissibility of these exhibits does not depend upon those facts. The questioned articles were and are: the straight tire tool or jack handle, the shop towel and coins, the door from the Pepsi-Cola machine, and the cigarettes. The tool, towel and coins and the door were received in evidence; there was only testimony concerning the finding of the cigarettes. Although the objections made were somewhat "sketchy," we consider the basic admissibility of this evidence. Counsel did specifically object that there was no evidence that the shop towel or grease rag was taken from the station and that the owner was unable to identify it. That is true, but he did testify that he used regularly (from a supply service) grease rags with the same markings or initials; we consider this identification as sufficient to support the admissibility, for all identifications cannot and need not be wholly unqualified. State v. Johnson, Mo., 286 S.W. 2d 787; State v. Romprey, Mo., 339 S.W. 2d 746.

■ The essential question is whether these articles found in defendant's car, and the door of the Pepsi-Cola machine used for comparison, were and are sufficiently relevant to the charge against defendant as to be properly admissible. In other words, do they tend to connect the defendant with this crime? In State v. Russell, Mo., 324 S.W.2d 727, loc. cit. 731, the court said: "Defendant also contends that the court erred in admitting into evidence the crowbar and the gloves found in the Dodge car for the reason that (1) they were not shown to be the property or in possession of defendant or to have been used in the commission of the crime, and (2) they did not tend to prove the crime of burglary or stealing and were prejudicial and tend to prove him guilty of a crime for which he was not on trial. Gloves and crowbars are generally known to be common tools of burglars and thieves. In this connection it is worthy of note that the lock on the door of the tavern had been 'jimmied'. The gloves would prevent the imprint of the fingers of those participating in the burglary and theft; the crowbar was adaptable to the 'jimmying' of the lock; all were found in the Dodge car in close proximity to the stolen safe. These facts were a circumstance for the consideration of the jury and were admissible. State v. Davis, 80 Mo. 53." On facts rather similar to ours, see State v. Smith, 357 Mo. 467, 209 S.W. 2d 138, 141. In general, articles which fairly tend to connect the defendant with the crime charged are admissible, whether

found at the scene of the crime or in defendant's possession. See, generally: State v. Washington, Mo., 335 S.W.2d 23; State v. Swinburne, Mo., 324 S.W.2d 746; State v. Casey, Mo., 338 S.W.2d 888; State v. Lindner, Mo., 282 S.W.2d 547; State v. Gerberding, Mo., 272 S.W.2d 230; State v. Martin, 349 Mo. 639, 162 S.W.2d 847; State v. Wynne, 353 Mo. 276, 182 S.W.2d 294. When exhibits meet that qualification, they need not be referred to in the charge as made; they are merely evidence, tending to prove defendant's guilt. We have no doubt here that all of the articles in question were admissible. The lug wrench was specifically connected with the prying open of the Pepsi-Cola machine and, being found in defendant's car, it had a direct tendency to connect him with the crime. The door itself was admissible as a link in that chain. The shop towel or rag bore an identification similar to that appearing on Moore's towels; the Pepsi-Cola machine had been broken open and the jury might infer that coins were taken from it. The fact that three pennies were in the towel along with nickels, dimes and quarters, whereas that machine supposedly did not use pennies, is a matter going to the weight of the evidence. The presence in the car of cigarettes of types carried for sale by the filling station, both in a carton and in loose packages, was a matter sufficiently relevant to justify the admission of the testimony, despite the argument that cigarettes are "homogeneous" and not subject to specific identification. We note in that connection that the full carton was found *under* the front seat of the car, a somewhat unusual place to carry cigarettes. We hold that none of this evidence was improperly admitted.

■ We note here that although the testimony indicated that the used spoon-type tire tool was not worth more than a dollar or a dollar and a half, the actual value is immaterial if the article was stolen in the commission of a burglary. Section 560.110, RSMo 1959 (Pocket Parts V.A.M.S.).

■ Defendant raises, as his final point, the assignment that the court erred in finding him to be "a habitual criminal." For the present governing statute see § 556.-280, RSMo 1959 (Amended Laws 1959). It is apparent that the point intended to be made arises from these circumstances: after a showing of the conviction in Greene County of "Jack Witt" on August 30, 1960, of "Grand Stealing" with a sentence of two years, objection was made to the record of the Missouri State Penitentiary offered under the name of "Jackie Dean Witt." Thereupon, a Deputy Sheriff of Greene County testified that he knew the defendant, that he took him to the penitentiary and that he took no other Jack Witt, or Jack Gene Witt or Jackie Dean Witt there. The objections made at the trial indicate that the only point raised lay in the difference in the middle names, as recorded. The penitentiary record was received in evidence and the court examined it. After the jury's finding of guilty, the overruling of defendant's motion, and the granting of allocution, the court imposed its two concurrent sentences of four years each. Generally, a middle name has little, if any, legal significance. State v. Hands, Mo., 260 S.W.2d 14, 18; Keaton v. Jorndt, 220 Mo. 117, 119 S.W. 629, 633; and see, generally, State v. Baugh, Banc, Mo., 323 S.W.2d 685. Here "Gene" and "Dean" sound sufficiently alike to permit an inference of a mistake. But we need not so speculate; the Deputy Sheriff testified that he took this defendant to the penitentiary and, if further identity was necessary, that testimony supplied it. Without suggesting in any way that defendant himself should have taken the stand, he certainly could have produced other evidence to refute this charge if, in fact, he was not the person so sentenced and confined.

We find those matters of record which we are required to examine under Rule 28.02, V.A.M.R. to be sufficient; and, finding no reversible error, the judgment is affirmed.

All of the Judges concur.