**STATE of Missouri, Respondent,**

v.

**John William ASTON, Appellant.**

**No. 51987.**

Supreme Court of Missouri,
Division No. 2.

March 13, 1967.

Richard J. Rabbitt, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, Michael J. Yatkeman, Sp. Asst. Atty. Gen., St. Louis, for respondent.

EAGER, Presiding Judge.

■ Defendant was found guilty by a jury of second degree burglary and of stealing. The jury assessed his punishment at imprisonment for two years on each offense, separately. The trial court, obviously acting under § 560.110, RSMo 1959, V.A.M.S. (to which all statutory citations will refer), as amended in Laws 1959, H.B. 260, sentenced defendant to two years for each offense, the terms to run concurrently. We have recognized that the Court has that power under the statute. State v. Sims, Mo., 386 S.W.2d 396; see also State v. Taylor, Mo., 336 S.W.2d 495.

■ Defendant was represented prior to trial and throughout the trial by counsel of his own selection. A comprehensive motion for new trial was filed; when this was overruled, counsel filed notice of appeal and ordered, approved and filed the transcript, after having procured additional time. Counsel has, however, elected not to file a brief on appeal, hence we consider those assignments of the motion for new trial which are sufficient under Rule 27.20, V.A.M.R. We note here that this practice will not be continued under our Rule 28.02 as recently amended (Journal of Missouri Bar, February, 1967), effective September 1, 1967. Since one of the assignments

questions the sufficiency of the evidence, it will be necessary to state the evidence in some detail.

In the early morning of May 1, 1964, a tavern and restaurant operated by one Louis Seiler at 1943 Woodson Road in Overland, St. Louis County, was broken into. Seiler had closed it securely at 2:45 a. m. when he left. When he next saw the place about 9:00 a. m., having been called by the girl who reported at 8:00 a. m. for the day shift, he, as well as the police, who came about 8:15, found this situation: the heavy wire screen covering a large exhaust fan at the rear of the kitchen had been pulled or forced up from the bottom of the frame, and two blades of the fan had been bent inward, leaving an opening from the outside; the coin box of a pinball machine had been pried open and removed and the wooden frame around it had been split, with strips of wood on the floor underneath; the cash drawer or coin box of the pool table (which was coin operated) had been pried open and was empty; there was no money in either machine; a drawer under the cash register had been ransacked and from it a blackjack owned by Seiler had been taken; a Winchester shotgun, which was owned by Harry Wipke and was being kept temporarily at the tavern, was gone, and the contents of a filing cabinet had been "dumped out and disturbed." A sliding window was also found open; this locked with a "throw over" latch from the inside. The pinball machine took dimes; the pool table quarters. Both were owned by one Otis Greif and his father and they were the only ones who opened them and took out money. Seiler did not even have keys.

At approximately 3:30 a. m. on May 1, 1964, an officer of the Overland police, on regular patrol, saw a 1958 Pontiac in the parking lot adjacent to the tavern. He went over to the car; there were two men in it. He talked to the driver and asked him what they were doing there; the latter replied that they were waiting for some "girl friends." The driver gave his name as Rickett, and said that the name of the other man (who appeared to be asleep) was John Aston; the officer looked at Rickett's driver's license, took the license number of the car and made notations of the information he had received. At about 5:00 p. m. on that day he saw the same car in the "storage yard" of the Overland garage and saw this defendant at the Overland police station. He identified defendant at the trial as the same man he had seen in the car as a passenger at 3:30 a. m. on May 1, 1964, in the lot adjacent to the tavern. The officer incorporated his notes into the police report which he reviewed before testifying.

At 12:30 a. m. on May 1, 1964, William Pierce, a patrolman of the St. Louis County police, driving alone, pursued a 1958 white and green Pontiac, traveling at high speed on Lindbergh Boulevard, but lost it. There were one or two occupants besides the driver. He noted that it had one taillight out. At about 3:30 to 4:00 a. m. he saw what he believed to be the same car, occupied only by the driver, on McKelvey Road; he followed it to St. Charles Road, thence west on St. Charles; when the car reached the overpass of Interstate 270, it made a right turn on a ramp which took it to the southbound lanes of 270; when it reached those lanes it was driven *north* for a short distance, then *crossed* the median strip and was driven on north in the northbound lanes, attaining speeds in excess of 75 miles an hour. The patrolman managed to overtake it and stop it with his red light and siren. He approached the driver and told him that he was under arrest for careless and reckless driving and for speeding, and instructed him to come out of the car. The driver was this defendant and was so identified at the trial. As defendant started to come out of the car, he was apparently shoving something underneath the seat. The officer placed handcuffs on him and had him stand at the front of the car; he then searched the car and found the following articles: a quantity of dimes, quarters and nickels both on the front seat and on the floor; a blackjack, a shotgun,

and a tire tool or lug wrench were found under the seat. A portion of the money on the seat was in a handkerchief, the rest was loose. The money was counted, being $59.90 in dimes, $2.75 in quarters, three nickels and two pennies; all the articles were taken to the police station and marked, the money and handkerchief being placed in a suitable container. All were produced and identified at the trial. The car was towed in to the police station or a garage; defendant was taken first to the county police station and processed, but he was turned over to the Overland police at about 11:00 a. m. When the officer asked him at the scene about the money and gun, he said that he was a coin collector and that he had bought the gun for $7 from a man whom he did not know; he further stated that he carried the lug wrench and blackjack for his protection. The shotgun was positively identified at the trial by Harry Wipke as the one which belonged to him and which had been left at the tavern; the blackjack was stated by Seiler to be identical to the one which had been stolen from the tavern.

Seiler testified that defendant had been in his tavern on the night of the burglary, that he had served him drinks, and that a man known to him as "Rick" had been with him. Defendant's trousers and shirt were sent to the Highway Patrol for testing, with a sample of grease and paint from the exhaust fan. A Highway Patrol chemist testified that grease found on defendant's shirt and trousers was of the same type as that found on the fan; another examiner testified that the markings on the wood taken from the machines in the tavern were prymarks and that they could have been made by the tools (tire tool and screwdriver) produced and identified at the trial; if not, then by similar tools.

■ At the Overland police station defendant was again "processed" taking perhaps an hour or an hour and a quarter. At about noon Detective Leonard Crump started to question him about the burglary and he denied any participation; they then talked, more or less casually for perhaps thirty minutes, after which defendant was again questioned. At that time he said that he had "domestic problems and also other problems, and that he might as well get it straightened out." The officer testified that defendant then stated orally: that he and another man drove to the tavern at about 3:00 a. m., that the other man sat in the car while he, the defendant, went around to the back of the tavern, pried open a screen over the fan opening and crawled in; that he then "pried open some pinball machines," took a shotgun and left; that as they were backing out an officer of the Overland police drove up and questioned Rickett (whom he identified as the other man), took their names, etc., and told them to leave; that they then went back to a restaurant where they had left Rickett's car, and separated; that on his way home he was arrested by a county policeman; that they had left a third man in Rickett's car because he was intoxicated and had "passed out." The only objection, if it be such, to any part of the foregoing testimony was made after a full recital of defendant's statements concerning the burglary and preceded a statement of what the Overland police officer had said and what defendant and Rickett did thereafter. The statement of counsel was as follows: "I object to what he said that day. I think it should be more specific." The Court said: "Overruled." We digress here to say that this was in nowise a valid objection to a confession, as such. It stated no reasons whatever, and actually seems to have been directed at procuring more specific wording.

Another officer, Thomas Hardesty, was also present at the interrogation. He corroborated the oral statements of defendant as just related. All the foregoing consumed about an hour, during which time both defendant and the officers had eaten hamburgers and had drunk coffee. At about 1:00 o'clock defendant personally wrote a confession, actually printing the body of it in his own hand, and, when com-

pleted, he signed it. The officers testified that the wording was entirely his own. It contained no more, and probably *less,* than his oral statements. In toto, omitting signature and witnesses, it was as follows: "Voluntary statement under arrest. Date: May 1, 1964; time, 1 P.M.; place, Overland Police Station. I, John William Aston, am 22 years of age and my address is 920 South Main Street, St. Charles, Missouri.

"I have been duly warned by Sgt. Ralph Crump and Det. Tom Hardesty, who has identified himself as Detective of the Overland Police Department that I do not have to make any statement at all, and that any statement I make may be used in evidence against me on the trial for the offense concerning which this statement is herein made. Without promise or hope of reward, without fear or threat of physical harm, I freely volunteer the following statement to the aforesaid person:

"At approximately 3 A.M., May 1st, myself, John Aston and Leonard Rickett left Wilson's Restaurant and went to Lou's Place to burglarize it. We parked behind the place and I went into it through a big fan. While inside I broke into the pinball machine and the pool table. I got the money and left. While leaving, an Overland Police car drove up and questioned Rick. We then went back to Wilson's restaurant and picked up Rick's car. Rick said he was going home. While on my way home I was taken into custody by the St. Louis County Police.

"I have read this statement consisting of 1 page and the facts contained therein are true and correct." The first portion, which stated the warnings, was printed on a form generally in use. The remainder was written by the defendant and the personal details were inserted by him. These officers testified: that defendant was told that he might call an attorney or a bondsman, but that he did not do so and gave no reason, except that "there was no one that he wished to call at that time"; that no one struck defendant, threatened him, made him any promises, or offered him food as a "reward"; that he was not handcuffed when questioned but merely sat in a chair beside the desk; that he wrote on Sgt. Crump's desk, and that he was permitted to smoke. Defendant did not testify, and no evidence whatever was offered on his behalf to contradict the testimony of these officers concerning the interrogation.

We turn now to defendant's motion for a new trial. The first two assignments concerning the weight of the evidence and "the law and the evidence" are entirely too general for consideration under our Rule 27.20. State v. Kukovich, Mo., 380 S.W.2d 324; State v. Ivory, Mo., 327 S.W.2d 870; State v. Adams, Mo., 380 S.W. 2d 362. In one assignment defendant complains that the Court erred in not directing a verdict of acquittal because the State "failed to prove a breaking and entering." This will require no discussion, and we merely refer back to our recital of the evidence. It is perfectly obvious that there was proof of a breaking and entering, and that defendant was connected with it by substantial evidence. State v. Smith, Mo., 357 S.W.2d 120; State v. Armstrong, Mo., 361 S.W.2d 811. In an oral motion for acquittal at the close of the evidence counsel noted that the employee who first opened the tavern on the morning of May 1st was not produced, and that there was no proof that more than $50 in value had been taken. The absence of the girl employee was immaterial; there was abundant evidence to show the breakin. There being sufficient evidence of a burglary, the taking of anything of value would constitute a felony. State v. Crow, Mo., 388 S.W.2d 817; State v. Witt, Mo., 371 S.W.2d 215. We shall refer to this point later in connection with the matter of instructions. The motion for an acquittal was properly overruled.

Prior to trial defendant filed and the Court heard evidence upon a motion to suppress certain physical evidence taken from defendant's car at the time of his arrest. This included the coins, the shotgun

and the blackjack. It was alleged that the seizure was made before defendant's arrest, that the search was unreasonable, that defendant was "within the peace of the state" and that the seizure violated sundry constitutional provisions, federal and state. The Court overruled the motion, after hearing the testimony of Officer William Pierce. This point is preserved and somewhat amplified in the assignments of defendant's motion for a new trial, being extended to include other articles pursuant to objections at the trial. We hold that the ruling on the motion was correct. The officer saw defendant violating the law; he was entitled to arrest him and did arrest him prior to any search whatever. He had also seen defendant "shoving" something underneath the front seat before he searched the car. As defendant got out of the car the officer saw loose coins both on the seat and on the floor. Counsel say that the officer had no knowledge that a felony had been committed and that the search of the car was not necessary for his protection, especially since defendant had been handcuffed. The officer was alone. He had no way of knowing what defendant had shoved under the seat. Under these circumstances, the search was reasonable and lawful as an incident to the arrest. State v. Camper, Mo., 353 S.W.2d 676; State v. Witt, Mo., 371 S.W.2d 215; State v. Green, Mo., 292 S.W.2d 283; State v. Edwards, Mo., 317 S.W.2d 441; State v. Carenza, 357 Mo. 1172, 212 S.W.2d 743; State v. Brookshire, Mo., 353 S.W.2d 681; State v. Jefferson, Mo., 391 S.W.2d 885; State v. Wiley, Mo., 412 S.W.2d 485, opinion filed February 13, 1967. In several of the cases just cited cars were searched after the arrest. In Camper, the arrest was made for a traffic violation, and items found upon a search of the car considerably later were held to be admissible in a burglary prosecution. The facts and ruling in that case are particularly applicable here. See, also, Witt, supra, as involving rather similar facts. The search and seizure were lawful, and the various articles, having been specifically identified and traced, were admissible in evidence. None of defendant's constitutional rights were violated, and the exhibits were sufficiently connected with the burglary to justify their admission in evidence. State v. Witt, Mo., 371 S.W.2d 215; State v. Martin, 349 Mo. 639, 162 S.W.2d 847; State v. Washington, Mo., 335 S.W.2d 23; State v. Swinburne, Mo., 324 S.W.2d 746.

■ Error is assigned in the refusal of the Court to instruct the jury concerning the offense of stealing less than $50 in value, and in instructing on stealing over $50 when there was allegedly no evidence to support such a finding. The Court instructed on burglary alone, burglary and stealing, and separately on stealing over $50 *if* the jury found defendant *not guilty* of burglary. Defendant's real point seems to be that the State did not prove "how much money was taken from the place," that an instruction should therefore have been given on the lesser offense, and that the stealing instruction as given was not supported by the evidence. It is true that no one knew how much money was in the machines just prior to the burglary, and that the average weekly "take," as *estimated* by the owner, might have indicated the presence of a sum less than the $62.82 found in defendant's car. However, there was ample evidence (including the physical facts and defendant's own admissions) from which the jury could reasonably draw an inference that all the coins found in defendant's car had been thus taken in the burglary of the tavern, and the instruction on stealing over $50, as given, was supported by the evidence. The failure to give an instruction on stealing less than $50 could not have been prejudicial, for the jury found the defendant guilty of burglary. See, specifically, State v. Crow, Mo., 388 S.W.2d 817, 821(7, 8).

The transcript does not contain the information as it was originally filed. At the conclusion of the evidence the Court permitted an amendment which, according to the motion for new trial, the colloquy had at the time, the objections, and the State's

brief, consisted of changing the street address charged as the place of the burglary from 7425 Wise (which was Louis Seiler's residence address) to 1943 Woodson Road, the location of his tavern. The information charged, both before and after the amendment, that the place burglarized was "a certain store, shop or building * * * the property of Louis G. Seiler, an individual doing business as Lou's Place * * *." The residence was in Richmond Heights, the tavern in Overland. At the trial all the appropriate witnesses were examined and cross-examined solely concerning the break-in at the tavern, the condition of the machines, the exhaust fan, the sliding kitchen window, and the missing articles and money. The stage was thus set by the examination and cross-examination of the very first witness, Louis Seiler, the owner of the tavern. Under the circumstances, there could not possibly have been any real misapprehension as to the place intended to be charged. The address originally given was not a "store, shop or building" nor was Seiler doing business there as "Lou's Place." It is perhaps true that these allegations created some inconsistency, and defendant might well have moved for a more definite statement. Also, when the first witness demonstrated that it was the tavern which had been robbed, defendant might have legitimately requested a continuance.

◼ Such amendments are governed by our Rule 24.02 which permits an amendment at any time before verdict if no "additional or different offense is charged and if substantial rights of the defendant are not prejudiced." We are convinced that no substantial rights of defendant were prejudiced in that he and his counsel knew all along, and *specifically* from the very beginning of the trial, what the charge actually was. Nor do we find that the amendment created an additional or different offense. All the elements of burglary and of stealing were charged. Defendant's objections and motion for a mistrial stated no factual grounds of prejudice, simply stating that this was a *surprise* and that defendant had therefore not had a fair trial. Our courts have been rather liberal in upholding the rulings of the trial courts in permitting amendments. State v. Bowers, Mo., 29 S.W.2d 58; State v. Smith, Mo., 261 S.W.2d 50; State v. Zammar, Mo.App., 286 S.W.2d 54; State v. Taylor, Mo., 375 S.W.2d 58. While none of these cases involved our facts, they tend strongly to indicate that the amendment here was permissible. A further point is made that the Court erred in failing to instruct the jury that the information had been amended. The making of the amendment involved a matter of law and the jury had nothing to do with it. That point is wholly without merit.

◼ The information cited § 560.045 (coupled with the stealing section, § 560.-156) as having been violated; that section refers to burglary in the second degree of a dwelling; the citation of any statute was unnecessary and, under the circumstances, we shall consider the citation as surplusage. The correct section was 560.070, which defines the burglary of a building in which goods, wares and merchandise are kept. The reasons for nonprejudice, which we have already stated, apply equally to the erroneous citation. We see little, if any, excuse for the making of two such errors in an information. Nevertheless, in the absence of demonstrated prejudice to the defendant, we are unwilling to deny the enforcement of the rights of the public because of such neglect. The point is denied.

◼ The last assignment attacks the admission of defendant's written confession and the testimony relating to his oral statements on constitutional grounds, and also the failure of the Court to suppress all such statements. The first such objection came at the offer of the writing; upon the Court's offer to let counsel develop "evidence of threats and duress" outside the presence of the jury, counsel declined to do so and elected to question the officer in the presence of the jury. That testimony developed absolutely nothing to indicate duress, threats, promises, coercion or any form

of intimidation; and the defendant did not put on *any* evidence, within or without the presence of the jury. It was affirmatively shown that defendant was fed, that he was permitted to smoke, and that the officers told him that he might call an attorney or a bondsman, but that he declined the offer. Additional warnings were given to him in writing at the top of the page on which *he wrote* his confession. In the motion for new trial it is alleged that these admissions were received in evidence in violation of the Fifth and Fourteenth Amendments of the Federal Constitution and of § 19 of Article 1 of the Missouri Constitution, V.A.M.S. All of the statements of the defendant were made on May 1, 1964, and the trial began on September 30, 1965. In Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the Court held that the sundry admonitions announced in the case of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, did not apply to any prosecution in which the trial was started before June 13, 1966. They are, therefore, inapplicable here. We revert to the law as declared in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977, and the interpretations thereof, in considering the validity of the present statements. In Escobedo, a defendant upon whom an investigation had "focused" had been refused an interview with his previously employed lawyer, although he had asked several times to see him. The confession thus taken was ruled invalid. Our Court has held that it will not expand the holding of Escobedo beyond its stated facts, and we again so rule. State v. Howard, Mo., 383 S.W.2d 701; State v. Collins, Mo., 394 S.W. 2d 368; State v. Dixon, Mo., 411 S.W.2d 185, decided February 13, 1967. In this situation we consider the "totality of the circumstances" surrounding the making of the statements. State v. Beasley, Mo., 404 S.W.2d 689, and cases there cited and discussed, including Escobedo. See also State v. Craig, Mo., 406 S.W.2d 618. Here there was no evidence whatever of any improper action by those having the defendant in custody, there was affirmative testimony of an offer to permit the defendant to call counsel and of a refusal by him, and there were printed notices on the form which he used, stating that he did not have to make any statement at all and that any such statement might be used against him. We hold in these circumstances that all statements made and given were affirmatively shown to have been voluntary, and that neither the right to counsel nor any other constitutional right was in no way infringed. Beasley, supra. Moreover, the admission of the written statement, over objection, could not have been prejudicial to the defendant for the very simple reason that his full oral statements had been admitted without objection and that they included *all* the elements of his written statement and more.

■ This case was tried after the ruling in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, which has been much discussed and continues to be difficult of interpretation. Recently that case has been followed in Sims v. State of Georgia, 385 U.S. —, 87 S.Ct. 639, 17 L.Ed.2d 593, decided January 23, 1967. The result seems to be that in cases where the voluntary nature of a confession is controverted *by evidence*, the Court should make an affirmative finding that the confession *was or was not* voluntary, and should only submit it to the jury if it has thus been found, independently, to be voluntary. In both of those cases the question of voluntariness was a *live issue* upon the evidence. In our case there is no evidence whatever tending to show that the oral statements or the written statements were involuntarily made. Compare State v. Rapp, Mo., 412 S.W.2d 120, decided February 13, 1967. When objection was made to the written confession, the Court offered to permit counsel to cross-examine the officer who had taken it, outside the presence of the jury. Counsel declined and proceeded with his cross-examination in the presence of the jury, thus largely eliminating the course of procedure suggested in Denno. The Court here did hold the confession admissible at the conclusion of that cross-examination, and the jury was later

instructed on the issue of voluntariness. The facts here distinguish this case from Denno and Sims. Furthermore, under no circumstances could the admission of the written confession have constituted prejudicial error, since the oral statements had already been fully heard by the jury. No constitutional rights of the defendant were infringed and all of the statements were properly admitted.

We find no reversible error in those parts of the record which we consider under Rule 28.02.

The judgment is affirmed.

All of the Judges concur.