STATE of Missouri, Respondent,

v.

John Leonard PUGHE, Appellant.

No. 53239.

Supreme Court of Missouri,
Division No. 1.

June 10, 1968.

Norman H. Anderson, Atty. Gen., Richard C. Ashby, Asst. Atty. Gen., Jefferson City, for respondent.

Commodore M. Combs, Jr., Kansas City, for appellant.

WELBORN, Commissioner.

Appeal from denial of relief in Rule 27.-26, V.A.M.R. proceeding.

Appellant, John Leonard Pughe, was found guilty by a jury in the Jackson County Circuit Court of robbery in the first degree. He was sentenced, as an habitual criminal, to eight years' imprisonment. The judgment of conviction was affirmed on appeal to this court. State v. Pughe, Mo., 403 S.W.2d 635.

Appointed counsel who represented Pughe on his trial and on the prior appeal filed a 27.26 motion in the Jackson County Circuit Court. When the motion came before the court, counsel advised the court that no further evidence was necessary and that the question was purely one of law. Argument was heard on the motion and the trial court made findings of fact and conclusions of law and denied the relief sought. This appeal followed.

Essentially, the questions raised by the 27.26 motion and this appeal relate to the admission into evidence at the trial of in custody inculpatory statements of Pughe and the trial court's handling of the issue of the voluntariness of such statements. Appellant contends that, tested by current federal standards, the trial court's rulings denied him constitutionally protected rights. Appellant contends that the court below, in this 27.26 proceeding, failed to apply federal constitutional standards. Inasmuch as, by appellant's statement, the questions presented are of law only, we are not limited, on this review, to the findings of the trial court, but may affirm the judgment, if correct, although for reasons other than those relied upon by the trial court. Edgar v.

Fitzpatrick, Mo.Sup., 377 S.W.2d 314, 318 [12].

Although appellant testified, at the hearing on the original trial on the voluntariness of his admissions, that he had been physically mistreated by the police, appellant's 27.26 motion did not attack the trial judge's rejection of such testimony. In the motion and in this court, the appellant's claim is based upon the assertion that the statements were not properly admissible because they were the product of lengthy in custody police interrogation, without proper and adequate warning of constitutional rights. The evidence bearing on such issue was as follows:

The charge against appellant arose out of the holdup of a Western Union office at around 4:00 P.M., July 22, 1964. Pughe was arrested between 8:00 and 9:00 P.M. on July 23, in connection with another incident. Pughe was taken to police headquarters. There he was interrogated from about 11:30 P.M. to 2:30 A.M. by Detective Reed of the Kansas City Police Department. A sergeant was in and out of the room when the questioning took place, but, for the most part, Reed and Pughe were the only persons in the room. Reed began questioning Pughe about an attempted burglary of a supermarket. According to Reed, in the course of the questioning and with no previous mention of the Western Union robbery, Pughe "volunteered the information that he had committed the robbery of the Western Union Office * * *." Reed said that this statement was made after about 15 minutes' interrogation on the "other matter." Reed then obtained the police department file in the Western Union case and further interrogation produced information corroborated by the file. Reed proceeded to take two written statements from Pughe, first on the "other matter," and, commencing shortly before 2:00 A.M., on the Western Union case. Reed typed the statement and it was signed by Pughe, using an alias, at around 2:30 A.M.

At approximately 9:00 A.M. on the morning of July 24, Pughe was placed in a police lineup with two other persons. The clerk at the Western Union office identified Pughe. Pughe was then interrogated for approximately an hour by Officer Linhart and Sergeant Brady of the police department. According to Linhart, he had the Western Union file with Pughe's statement which had been reduced to writing. Although Linhart was somewhat vague about the details of the questioning, he did state that Pughe orally admitted the Western Union robbery.

At the trial, after a preliminary hearing out of the presence of the jury at which Officers Reed and Linhart and Pughe testified, the court found that the statements were voluntary. The written statement, although marked as an exhibit, was not placed in evidence, but Officer Reed testified in detail concerning the statement in which Pughe admitted the offense and Officer Linhart testified to the oral admission Pughe made to him.

In the course of the preliminary hearing outside the presence of the jury, Reed testified that when he started, around midnight or a little later, to prepare the written statement on the "other matter," he informed Pughe that he didn't have to make a statement and that advice was repeated when preparation of the written statement on the Western Union matter began. Reed testified that he also told Pughe that it was his right to consult with anyone he chose before he made a statement. He also said that he told Pughe that he had a right to counsel. Reed said that he asked Pughe if he wanted to call anyone and he said, "No." According to Reed, Pughe did not ask for counsel. Reed stated that he made no threats toward Pughe.

Officer Linhart replied negatively when asked, on the preliminary hearing, whether he had "an occasion to advise [Pughe] in regard to any rights he may have."

Pughe testified that he asserted his innocence throughout the questioning until

around 2:00 A.M., when Reed hit him in the face with his open hand. He stated that he was never told that he was not required to make a statement or that he might consult with anyone.

When trial resumed before the jury, Reed testified to Pughe's statement. No question was asked him on either direct or cross-examination about the use of force or threats in obtaining the statement or about the advice given Pughe. Linhart stated, as on the preliminary examination, that he told Pughe nothing about his constitutional rights. Pughe did not testify in the trial proper.

In extending his invitation to review the significance of this evidence in the light of current federal constitutional standards, counsel for appellant has seen fit to rely, in his brief, upon Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, followed by the admonition that we are not to dispose of his contentions on the basis of the particular facts of Escobedo and the non-retroactivity of Miranda. (Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. Miranda was decided June 13, 1966. The trial of defendant concluded March 2, 1965. His conviction was affirmed May 11, 1966.) However, it is obvious that neither of those decisions is here controlling, although they are "relevant on the issue of voluntariness" of any confession or admission. Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed. 2d 423, 426. In other words, the test here is that of the "totality of the circumstances," the test recognized and applied in cases decided subsequent to Miranda, although not controlled by the nonretroactive guide lines of that case. See Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; Clewis v. Texas, supra; Greenwald v. Wisconsin, 390 U.S. ——, 88 S.Ct. 1152, 20 L.Ed.2d 77. Also here relevant are the pre-Miranda cases, such as Ashcraft v. State of Tennessee, 322 U.S.

143, 64 S.Ct. 921, 88 L.Ed. 1192; Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037; Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed. 2d 513; Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760.

We do not deem it necessary to contrast the factual situation here with that presented in each of the above cases. There can be no question that none involved an admission that was the product of only fifteen to twenty minutes of in custody interrogation, accompanied by advice, although admittedly not complete by Miranda standards, which clearly permitted choice as to whether the statement should be made. As appellant states, the total in custody interrogation did continue over a period of some three hours. However, it is clear that the length of the questioning was not the result of persistent denial of guilt by appellant, but was the result of the number of incidents involved and the officer's lack of dexterity in operating a typewriter. In addition, appellant was not a person unfamiliar with the criminal law processes. He had been convicted for a 1961 felony in California and imprisoned for some two years.

■ Officer Linhart acknowledged that, in his post-lineup interrogation, he did not advise the appellant regarding his right to remain silent, etc. However, that officer's questioning was subsequent to the making of the statement to Officer Reed. Officer Linhart had that statement when he interrogated appellant. The interrogation was relatively brief and there was no showing of coercion or duress in connection with the statement to Linhart. Appellant in his testimony made no reference to the Linhart questioning. We are cited no federal authority that compels the conclusion that, in these circumstances, the admission must be held involuntary. We conclude that, in view of the entire circumstances, the admission was not the product of physical or psychological coercion and therefore it was voluntary.

Our review of this record, in the light of current federal standards, leads us to conclude that the trial court properly denied relief on the basis of petitioner's claim regarding the admission of his statements to the police.

Appellant's second ground of objection relates to the trial court's handling of the issue of the voluntariness of his statement. He again attacks the failure of the trial court to submit an instruction on the voluntariness of the appellant's statements. Insofar as this attack is based upon state law, the answer is to be found in State v. Pughe, supra. This proceeding cannot be employed to relitigate the question. Appellant also charges that the court's refusal to submit the issue of voluntariness "is violative of substantive and procedural due process." The appellant cites no case which supports his position. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, does require that state procedures "be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." However, in a footnote, the court observed: "Whether the trial judge, another judge, or another jury, but not the convicting jury, fully resolves the issue of voluntariness is not a matter of concern here. To this extent we agree with Stein [v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522] that the States are free to allocate functions between judge and jury as they see fit." In view of this pronouncement, we find no basis for the appellant's contention that the allocation of functions in this case was violative of due process requirement.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.