STATE of Missouri, Respondent,

v.

Robert B. AUGER, Appellant.

No. 53722.

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1968.

1

Norman H. Anderson, Atty. Gen., Jefferson City, James P. Jouras, Special Asst. Atty. Gen., Kansas City, for respondent.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute and Gary Clifton, Liberty, for appellant.

EAGER, Judge.

Defendant was convicted of second degree burglary and stealing; his punishment was fixed by the jury at four years for the burglary and three years for the stealing. A motion for new trial was duly filed and overruled and he appealed. He was represented at the trial and is represented here by able and most diligent counsel.

The evidence showed without dispute that at some time between 2:00 p.m. and 9:00 p.m. on August 4, 1967, the second floor apartment of Ida Mae Ferril at 2009 North Erie, in North Kansas City was entered, and that about $350 in currency, some coins, a manila folder of papers, an "old" watch, and some costume jewelry were stolen. The doors were shut and secured when Mrs. Ferril left at 2:00; when she returned the back screen door had been unfastened, two holes had been punched in it near the lock, and the main back door had been opened and was partly ajar. Drawers had been pulled open and left open. Mrs. Ferril found on the floor a receipt from "Ed's Florist" issued in the name of defendant for flowers ordered on that day for one Victoria Staggs. Mrs. Ferril identified this receipt as an exhibit at the trial. The manager of the florist shop also identified the receipt and stated that he made it out in quadruplicate; he gave one copy to the purchaser, one was sent to the recipient of the flowers, and one given to the driver for his information. This witness could not positively identify the defendant at the trial, as the purchaser. The police investigated the burglary almost immediately, and at that time either took the receipt or got all the information from it.

Detective Charles Ross and Lieutenant Kenneth Beck of the North Kansas City police later located defendant at 1627 Main Street in Kansas City, Missouri, on August 9; that address was shown (out of the presence of the jury) to be the location of the parole office. The officers had a warrant for the defendant which, after identifying themselves, they read to him. They both testified that Officer Ross at that time, and before proceeding any further, read to defendant the "Miranda Card" which contained the printed or typed notices and warnings required by that decision. As a part of his testimony Mr. Ross read the contents of the card into the record, as follows: "You do not have to make any statement at this time, and have a right to remain silent. Anything you say can and will be used against you in a court of law. You're entitled to consult with an

attorney before any interview and to have an attorney present at the time of interrogation. If you cannot afford an attorney, one will be appointed for you." Ross further testified: that he asked defendant if he understood that advice and that defendant said that he did; that defendant at that time denied all knowledge of the burglary; that he then showed defendant the receipt which had been found in Mrs. Ferril's apartment and defendant stated that it had been taken from him (supposedly in his wallet) by two men near 30th and Prospect about 8:00 a.m. on August 4th; that defendant was then taken to the Kansas City, Missouri Police Headquarters where he was booked and released to these same North Kansas City officers, who proceeded with him to their own police station; that there Ross *again* read the Miranda card "rules" to the defendant (because, as he said, the police custody had changed) and again defendant said that he understood them; that he, Ross, then read a form of "waiver" to defendant; thereupon defendant stated that he "did not wish to sign his name to anything," but further said that: "he didn't mind talking about it. He just didn't want to sign his name to anything"; that he, defendant, then proceeded to tell them orally of the details of the burglary, admitting that he committed it, and further stated that he had spent $100 of the money on a new suit and had paid $100 on an apartment for a girl friend. In the course of the conversation defendant also admitted that the receipt for the flowers was still in his billfold when he last saw it (a retraction of the story about the two men taking it). Defendant was dressed in a new suit when arrested. Mr. Ross was permitted to testify without objection that defendant not only said that he understood the warnings but that he, Ross, believed that he understood both the warnings and the questions asked. Lieutenant Kenneth Beck, who was with Ross, confirmed generally the facts just recited.

It was further shown that defendant told the officers that he had been in a mental hospital in Kansas, and that he was "sick" and needed help. The officers told him that they would so advise the Court and they did so. The record reveals that he was then sent to the Fulton State Hospital for an evaluation, and that a certification of some sort was returned. The State sought to introduce this certificate at the trial (apparently because of the statements of defendant about being "sick," etc.), but it was objected to by defendant's counsel as hearsay, and excluded. There was no attempt by the defendant to establish the existence of mental disease as negating guilt under the requirements of § 552.030, Laws 1963.

The woman to whom defendant had allegedly sent the flowers testified that she had known him for about three months, that he called her by phone on August 4, 1967, and that she thanked him for the flowers. Rather vaguely, she identified the receipt (or a copy), and she testified further that defendant had taken her to dinner on the next evening and had told her that he was buying a new suit; also, that on August 5th or 6th he had paid some money for the rental of her apartment and had given her some money as a "loan."

At the beginning of the trial defendant's counsel requested and were granted a hearing outside the presence of the jury on their motion seeking the exclusion from evidence of defendant's oral admissions. There were no factual allegations in the motion, but its intent was seemingly assumed. The testimony at that hearing was substantially the same as the trial testimony already recited. Defendant did not testify on either occasion. Only the two officers were called as witnesses. Officer Ross testified that, in reading the Miranda warnings to defendant in North Kansas City, he asked defendant separately, after the reading of each "one of his rights," if he understood it and that defendant said that he did; that defendant further said that in the past "his attorney" had advised him not to sign anything, but that "he

didn't mind talking about it." At the conclusion of that hearing the Court overruled the motion. Unless the mere refusal to sign a written waiver indicated such, there was no evidence, at that hearing or at the trial, to show any form of coercion or duress. In his oral statements defendant described many details of the burglary and of the theft. Mr. Ross also testified that after defendant had come "back from Fulton" and at the time of his arraignment, he offered to call defendant's mother but that defendant said "she probably won't come." The conversations of Officer Ross with defendant after the initial interview were mere official or social contacts.

On this appeal defendant submits three points: (1) That the Court erred in failing to exclude defendant's oral statements to the police officers, which were made after he had indicated that he "did not desire to waive" his rights to remain silent and to have an attorney present; (2) that the information was defective in alleging that the burglary was of an apartment which was a "dwelling place," rather than a "house" or a "building"; and, (3) that plain error was committed in failing to instruct the jury that it could find defendant guilty of stealing only, and not guilty of burglary. We shall consider all three but in inverse order.

█ As to the instructions. We first note that we will not consider any matter of instructions as "plain error" unless the Court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice. We approach the question from that standpoint. Defendant was charged in the information with burglary and with stealing in connection with that burglary. He was not charged with any independent stealing. Instruction No. 3 was on burglary only and there is no complaint of its correctness. Instruction No. 4 told the jury that if it found defendant guilty of burglary, as defined in the instructions, and further found that he "wilfully and feloniously did steal, take and carry away" from the apartment certain described property, "at the time and place aforesaid," then it would also find him *guilty of stealing in conjunction with burglary*; that instruction concluded: "and unless you find the facts to be, you will find the defendant not guilty of stealing in conjunction with burglary." It is not contended that this was not a correct instruction for that offense. Instruction No. 13 ·concerned the forms of verdict: the first part gave the jury the form to be used if it found defendant guilty of both burglary and of stealing "in conjunction with burglary, as defined in Instruction No. 4"; the second part told the jury that unless it found defendant guilty of burglary, as defined in Instruction No. 3, it would find him "not guilty of burglary or stealing in conjunction with burglary," and submitted an appropriate form for such verdict.

It is thus seen that there was no submission of an independent crime of stealing, either below $50 or above $50, under §§ 560.156 and 560.161, RSMo 1959, V.A.M.S. There was no such charge in the information. It is a little difficult to see, specifically, what defendant is complaining of in this point. If counsel has in mind that the stealing of less than $50 (without burglary) would be a misdemeanor, we note that under § 560.161, subd. 2(1) any stealing from a "dwelling house" is deemed a felony and the only evidence of any stealing here was from Mrs. Ferril's "dwelling place" or apartment, which we consider to be the equivalent of a dwelling house (as discussed later). At another point counsel say that the jury should have been permitted to acquit defendant of *either* burglary or stealing through a disbelief of the testimony. That argument is probably outside the scope of defendant's Point 3, as stated. However, the jury certainly was permitted to acquit the defendant of burglary under Instruction No. 3, and it was also permitted to acquit the defendant of stealing (in the only form submitted) under Instructions No. 4 and 13, although not wholly independent of burglary.

██ The jury here found the defendant guilty of burglary; presumably it did so *first*, having been instructed first as to that crime and having been told also that guilt of burglary was a condition precedent to any finding of guilt of stealing. Since defendant had been found guilty of burglary, any possible crime of stealing on this evidence would be a felony under § 560.-110, RSMo 1959, V.A.M.S., because committed in conjunction with burglary, and defendant could not have been prejudiced by a failure to submit an instruction on any independent stealing. There could be none if defendant was guilty of burglary. Thus, any possible error could not have been prejudicial. State v. Caffey, Mo., 404 S.W.2d 171; State v. Crow, Mo., 388 S.W.2d 817, cert. denied 383 U.S. 914, 86 S. Ct. 901, 15 L.Ed.2d 668; State v. Davy, Mo., 395 S.W.2d 211; State v. Aston, Mo., 412 S.W.2d 175. Indeed, we doubt seriously that there was sufficient evidence in this case to justify a submission of stealing except in conjunction with burglary. Defendant could not be prejudiced by a failure to instruct on a form of stealing of which there was no charge and no proof. Moreover, defendant is in no position to complain of the absence of a separate and independent stealing instruction since *all* stealing was automatically eliminated unless he was found guilty of burglary. It may well be that a greater burden was placed upon the State by Instructions 4 and 13 than it was actually required to bear. To the effect that the jury's discretion under the instructions was not "impaired or restricted" by the verdict forms submitted to it, see the opinion in State v. Shepard, Mo., 432 S.W.2d 235, adopted October 14, 1968, in Division Number One.

██ Many similarities to this case may be noted in State v. Smith, Mo., 365 S.W.2d 505, where the Court held that no error had been properly preserved, but clearly indicated that there was no prejudicial error, since the defendant had been found guilty of burglary. Defendant cites the case of State v. Qualls, Mo., 383 S.W.2d 547, where we reversed for the failure to give separate instructions on burglary and stealing. In that case there was one verdict-directing instruction submitting both in the conjunctive and requiring a finding of guilt or innocence on both. The Court reversed because of the failure to instruct separately on burglary and stealing. The objection there was properly preserved. In the present case separate instructions were given. We may say again that defendant was not prejudiced here by the instruction (or the verdict form) that he should be acquitted of all stealing if he was not found guilty of burglary. Certainly, there being concededly no preservation of error, the giving of these instructions was not such error as to cause "manifest injustice" and we decline to invoke Rule 27.20, V.A.M.R. The instructions gave the defendant all he was entitled to, if not more.

██ The attack on the information is highly technical and is without substance. The particular statute on burglary which is involved here (§ 560.045) refers to the "breaking into a dwelling house * * *." The information charges that defendant "did * * * break and enter the apartment which was the dwelling place of Ida Mae Ferril, 2009 Erie, North Kansas City * * *." It is rather ridiculous to contend that an apartment which is a dwelling place is not a "dwelling house" and we refuse to so hold. The purpose of an information is to inform the defendant of the charge against him, and no one could have possibly been misled here. The matter is discussed in State v. Jones, Mo., 365 S.W.2d 508, and there is no doubt whatever that an apartment (in a building, as it must be) regularly used as one's abode is his "dwelling house," within the purpose of our inquiry. Point No. 2 is denied.

The last point to be considered is that defendant's oral statements in the nature of a confession should have been excluded *solely because* of his refusal to sign a written waiver. The theory of counsel is that, having declined to so sign, he had thus in-

**6**

dicated that he did not wish to waive his right to remain silent or his right to counsel, and that any interrogation thereafter was improper, supposedly under the theory of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L. R.3d 974; however, counsel admitted in oral argument that this contention goes one step *beyond* the requirements of Miranda. The trial court held a full evidentiary hearing, outside the presence of the jury, on defendant's motion to suppress the admissions. The officers were questioned in great detail; · defendant did not testify. Substantially everything was developed there which was later shown at the trial, perhaps more. At the conclusion of that hearing the Court overruled the motion. At trial, the objections were renewed and overruled. We shall not review again the evidence concerning the admissions, but do point out certain elements. The full Miranda warnings were, according to the undisputed testimony, read to defendant at the very inception of the first confrontation; at that time defendant denied all knowledge of the burglary. When he was moved to North Kansas City, the same warnings were again read to him in full, and he said that he understood them. When a waiver was presented, he declined to sign it, simply saying that his attorney had always told him not to sign anything. However, the record indicates that he followed this almost immediately with the statement that "he didn't mind talking about it," and that thereupon he proceeded to discuss all the details freely. The record is wholly barren of any evidence of coercion or duress.

■ The evidence of the officers established, if believed, that the requirements of Miranda were fully complied with. In Miranda it is said, 384 U.S. loc. cit. 478, 86 S. Ct. loc. cit. 1630, 16 L.Ed.2d loc. cit. 726; "Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." See also State v. Pughe, Mo., 428 S.W.2d 549; State v. Aston, Mo., 412 S.W.2d 175; State v. Burnett, Mo., 429 S. W.2d 239. Heeding Miranda, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and other applicable authorities we rule that upon this evidence the admissions and statements were not, as a matter of law, involuntary and that they were not inadmissible upon that basis.

It becomes necessary, however, to consider a further point, although not specifically raised. At the conclusion of the hearing on defendant's motion to exclude his statements the trial court merely overruled the motion. Although the question of voluntariness here is raised somewhat collaterally, we allow defendant the benefit of the doubt on that score. In accordance with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3rd 1205; Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593, and State v. Glenn, Mo., 429 S.W.2d 225, the Court should have made a clear finding of record, formal or informal, that the statements and admissions were voluntarily made or that they were involuntarily made. Therefore, we entered an order, after the submission of the case, as follows: "It appearing from our consideration of this case that the trial court admitted in evidence certain oral admissions or statements of defendant as testified to by Officers Ross and Beck; that prior thereto the court held a hearing outside the presence of the jury to determine the competency of such statements; that at the conclusion of that hearing the court overruled a motion to exclude the statements and in effect ruled, then and later, that the statements were admissible; and it further appearing that the transcript of the record does not show with unmistakable clarity that the trial judge found that such statements were voluntarily made. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L. R.3rd 1205 and Sims v. [State of] Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593; State v. Glenn, Mo., 429 S.W.2d 225.

"It is therefore ordered that the trial court, after giving counsel notice and an opportunity to present arguments in regard thereto, and with defendant present, shall proceed to consider the evidence in the record in this case and make an express finding as to whether defendant's oral statements, as aforesaid, were or were not voluntary.

"It is further ordered that the aforesaid finding shall be promptly certified to this court to be considered as a supplement to the transcript so that this court may thereafter proceed to make a determination of all the issues in this case."

Thereafter we received from the trial court a certified supplement to the transcript, consisting of an order of that court, as follows: "Now on this 29th day of October, 1968, come the state, by the prosecuting attorney, and the defendant, in person, and by Gary Clifton, his attorney; and in accordance with the order of the Supreme Court of Missouri dated September 23, 1968, and filed herein on September 24, 1968, the matter of admission of oral statements in evidence in the trial of this cause is taken up by the court; evidence in the record considered; and the court doth find that said oral statements alleged to have been made by the defendant and admitted in evidence were by the defendant voluntarily made by him.

"THEREFORE, it is ordered that the aforesaid finding be promptly certified by the Clerk to the said Supreme Court of Missouri as a supplement to the transcript filed therein."

We now rule that the admission in evidence of defendant's oral admissions, statements and confessions at the trial was not prejudicial error. A hearing on the issue of voluntariness was duly held at the trial; the evidence was ruled admissible; and it now appears from the record that the trial court did find that all such statements were voluntarily made. The absence of a specific finding of the court, at trial,

that the statements were voluntary could not, under these circumstances, have been prejudicial. This has been ruled specifically in State v. Glenn, Mo., 429 S.W.2d 225, loc. cit. 239.

We note here in passing that the Court gave five instructions offered by defendant, one of which (No. 11) covered the subject of the supposed involuntariness of his statements to an extent and in a manner not really justified by the evidence. At this stage, however, that is "water over the dam."

An examination of the record, as required by Sup.Ct. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All of the Judges concur.