STATE of Missouri, Respondent,

v.

Johnnie STERLING, Appellant.

No. KCD 27781.

Missouri Court of Appeals,
Kansas City District.

March 29, 1976.

Motion for Rehearing and/or Transfer
Denied May 3, 1976.

Application to Transfer Denied
June 14, 1976.

Thomas M. Larson, Public Defender, Richard G. Roth, M. Shelbourne Bryant, Asst. Public Defenders, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Defendant was charged in a three-count indictment with rape, robbery in the first degree, and assault with intent to kill with a deadly weapon with malice aforethought. Having waived a jury, the offenses for which defendant stood charged were tried to the court. At the close of all the evidence the state elected to dismiss counts one (rape) and two (robbery in the first degree) of the indictment and the case was submitted to the court solely under count three of the indictment, assault with intent to kill with a deadly weapon with malice aforethought (Section 559.180, RSMo 1969).

The court entered a verdict finding defendant guilty under count three of the indictment. After a pre-sentence investigation, his punishment was fixed at thirty years confinement in the custody of the Missouri Department of Corrections.[1] Allocution was afforded, and judgment was rendered and sentence pronounced and entered accordingly.

On appeal, the brief filed on defendant's behalf by appointed counsel raises only one claim of error: "The court erred in overruling the motion to suppress defendant's written confession because it was taken after defendant had invoked his fifth amendment privilege not to incriminate himself and under the totality of circumstances derogated rights guaranteed to defendant by the Fifth and Fourteenth Amendments of the United States Constitution." Defendant, however, apparently concluding that

---

1. The prescribed punishment for violating Section 559.180, RSMo 1969, being " . . . imprisonment in the penitentiary not less than two years."

the brief filed by appointed counsel failed to raise all viable issues, filed four pro se briefs. Read in conjunction with each other, the pro se briefs appear to raise three additional claims of error which may be paraphrased as follows: (1) The verdict returned by the trial court did not find defendant guilty of an offense proscribed by Section 559.180, RSMo 1969, because it failed to include the word "aforethought" after the word "malice", and, therefore it was a verdict finding him guilty of an offense proscribed by Section 559.190, RSMo 1969, which carries a maximum punishment of five years imprisonment;[2] (2) Prosecution of defendant under Section 559.180, supra, rather than for "attempted murder", violated his constitutionally guaranteed rights of "due process and equal protection" because the maximum punishment prescribed by Section 559.180, supra, exceeded the maximum punishment prescribed in paragraph (2) of Section 556.150, RSMo 1969, the general "attempt" statute; and (3) The imposed sentence of thirty years confinement in the custody of the Missouri Department of Corrections resulted from the trial court's improper consideration of the other charges leveled against the defendant which were subsequently dismissed at the close of all the evidence, and was otherwise excessive.

 The four pro se briefs referred to were intermittently filed by defendant without leave of court over a period of approximately ten months, the fourth and final one having been filed on the day the case was argued before and submitted to this court on appeal. All but one were untimely filed. With respect to those filed out of time, defendant made no attempt to have them considered by invoking Rule 84.-08.[3] This court is being confronted with a steady progression of instances of accuseds in criminal cases on appeal filing pro se briefs even though their counsel of record have already filed briefs. Understandably, the pro se briefs which are filed rarely comply with the rules governing appellate procedure and, in many instances, infuse the respective appeals with elements of confusion. Appellate courts faced with this situation are placed in the incongruous position of either summarily rejecting such briefs for noncompliance with the rules, thereby giving the appearance of arbitrarily disregarding the rights of those seeking redress before them, or of expending an inordinate amount of time attempting to draw some semblance of meaning from them. In those instances where appellate courts, out of conscience, yield to the latter course, the entire appellate process is reined to almost a complete standstill because of the expenditure of time usually required to ferret out and understand the issues sought to be raised. Time and experience have taught that the administration of justice is best served by adherence to procedural requirements and rules. When procedural requirements and rules are lightly ignored, confusion is most often the result, and if justice then emerges it is more by chance than by design. Pro se briefs in criminal cases filed out of time without leave of court, and which bear little or no resemblance to compliance with appellate procedural requirements and rules, in most instances, confuse rather than aid the appellate process. Unrestrained consideration of them tends to place meaningful appellate consideration of criminal appeals in serious jeopardy. Although this court, with great reluctance, has concluded to review the issues raised by defendant in his pro se briefs for the simple reason that existing case law prevails to support a ready disposition of

---

2. The prescribed punishment for violating Section 559.190, RSMo 1969, being " . . . imprisonment in the penitentiary not exceeding five years, or in the county jail not less than six months, or by a fine not less than one hundred dollars and imprisonment in the county jail not less than three months, or by a fine of not less than one hundred dollars."

3. This court believes that where, as here, an accused is represented by counsel who has already filed a brief on his behalf, cause should be shown and leave of court obtained by an accused wishing to file an additional brief.

them, a caveat is sounded with respect to entertaining issues sought to be raised in future criminal appeals by pro se briefs which fail to comply with appellate procedural requirements and rules. If accuseds in criminal appeals represented by counsel insist on representing themselves separate and apart from the efforts of counsel of record, then they must abide by and be bound by the same procedural requirements and rules imposed on counsel and stand ready to suffer the same consequences for noncompliance.

Notwithstanding his contention that the verdict returned by the trial court did not find him guilty of an offense proscribed by Section 559.180, supra, defendant does not question the sufficiency of the evidence to support a verdict for violation of said statute. Therefore, a brief summary of the evidence will suffice. Defendant entered the victim's home at approximately 11:00 P.M. on the night of May 12, 1974, commenced hitting her with his fists and told her, "I intend to kill you." After a lapse of time, defendant then picked up a telephone and unmercifully beat the victim into a state of unconsciousness. According to the victim, just before she lapsed into unconsciousness, the defendant tore her robe off and "stuck his penis in [her]." The vicious beating administered by defendant broke the victim's arm in two places, her jaw in two places, and inflicted cuts "all over" her face and head requiring innumerable stitches. A written confession made by defendant, which was offered and admitted into evidence, corroborated certain portions of the victim's testimony.

In order to place defendant's first claim of error in proper dispositional context, it is necessary to review the evidence adduced in connection with his motion to suppress. Defendant was arrested at approximately 2:30 the following morning at his place of abode. He was taken to "police headquarters" of the Kansas City, Missouri, Police Department at 1125 Locust Street. The record is silent as to when he arrived at "police headquarters". Sometime after his arrest, and more precisely at approximately 4:20 A.M., a detective on the police force removed defendant from the "jail" on the eighth floor of "police headquarters" and took him to the second floor for the "purpose" of "interrogating" him. Two detectives on the police force conducted the interrogation. Prior to any interrogation, defendant was handed a printed "Miranda" warning and asked if he could read. Defendant replied that he could and then proceeded to read the printed "Miranda" warning. After defendant read the printed "Miranda" warning he was asked if he understood it and he replied that he did. The printed "Miranda" warning which was handed to and read by defendant, and which he stated he understood, contained a place for him to sign indicating a waiver of his rights explained therein. Defendant did not sign the printed "Miranda" warning, and, according to one of the detectives present, gave the following reason for not doing so: "He stated he understood his rights, but he just didn't want to sign any type of report at that time." Defendant at no time ever requested to contact or have an attorney present. Notwithstanding his refusal to sign the written waiver on the printed "Miranda" warning, the record bears out that almost immediately thereafter defendant "was willing to talk" and did talk to the two detectives regarding the offense for which he had been arrested. According to the record, during this stage of the interrogation, both of the detectives kept stressing to defendant "that he could have an attorney if he wished", "that he didn't have to make any statement", and "that he didn't have to talk to [them] if he didn't want to." Throughout this portion of the interrogation, defendant "wouldn't give [the detectives] too many facts, but he was willing to talk with [them]." After passage of a brief period of time defendant interrupted the questioning and advised the two detectives that he would like to talk to a "friend" before talking any more with them. Defendant's request was honored and all questioning ceased at that time. The "friend" with whom defendant wished

to talk was a gentleman by the name of Russell Dupree. Mr. Dupree, who was contacted by one of the detectives, arrived at "police headquarters" sometime after 5:00 A.M. Defendant, in an isolated place, conversed with Mr. Dupree for approximately fifteen to twenty minutes. Immediately after concluding his conversation with Mr. Dupree, defendant advised the two detectives that "he was willing to give [them] a statement in regard to the offense that [they] were questioning him about." However, before proceeding to interrogate defendant further, one of the two detectives again informed defendant of his rights per *Miranda*. After receiving his additional "Miranda" warning, defendant proceeded to orally relate to the interrogating officers his participation in the events which precipitated his arrest. During the course of doing so, one of the detectives again gave defendant a "Miranda" warning. Throughout the course of the interrogation defendant's behavior was described by the detectives as "normal". On the other hand, Russell Dupree, who was produced as a witness at the hearing by defendant, testified that when he talked with defendant at police headquarters he had an "anguished" look on his face and his conversation was sometimes difficult to "follow logically". The trial court obviously resolved this evidentiary conflict in favor of the state. The information which defendant orally related to the detectives on this latter occasion was reduced to writing and signed by defendant at approximately 7:30 A.M.

■ From the tenor of his argument, defendant's first claim of error appears to hang on the meaning to be drawn from certain language isolated by him from *Miranda v. Arizona,* 384 U.S. 436, 473, 474, 86 S.Ct. 1602, 1627, 1628, 16 L.Ed.2d 694, 723 (1966):

"If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege;

any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."

Using the above as a contentional point of origin, defendant argues that his refusal to sign the waiver portion of the "Miranda" warning which was handed to him conclusively "indicated" that he wished to remain silent and any statement secured thereafter from him could not "be other than the product of compulsion."

■ Defendant's argument emphasizes form over fact. The mechanical approach advocated by defendant is patently fallacious. If refusal to sign a written waiver conclusively indicates that an interrogee is claiming his constitutional right to remain silent, then, by the same logic, it could be argued with equal force that execution of a written waiver conclusively indicates that an interrogee is foregoing his constitutional right to remain silent. The inherent danger of emphasizing form over fact thus emerges with unmistakable clarity. The utilization of printed "Miranda" warnings and companion waiver forms by law enforcement personnel should be viewed for what it actually is—an effort to document their investigative file with written indicia that a "Miranda" warning was given and the interrogee waived the right to remain silent. But the existence of such documentations is by no means conclusive. As pointed out in *Miranda v. Arizona,* supra, 384 U.S. at 492, 86 S.Ct. at 1637, "[t]he mere fact that he signed a statement which contained a typed-in clause stating that he had 'full knowledge' of his 'legal rights' does not approach the knowing and intelligent waiver required to relinquish constitutional rights." Both sides of the proposition are succinctly stated in *United States v. Hayes,* 385 F.2d 375, 377 (4th Cir. 1967), cert. denied 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106 (1968): "Just as the mere signing of a boilerplate statement to the effect that a defendant is knowingly waiving his rights will not discharge the government's burden, so the mere absence of such a statement will not preclude as a matter of law

the possibility of an effective waiver." Fact prevails over form, not form over fact. Therefore, as noted in *United States v. McDaniel,* 463 F.2d 129, 135 (5th Cir. 1972), it becomes necessary to look at all the circumstances surrounding the interrogation to ascertain whether defendant's refusal to sign a waiver demonstrated that he was unwilling to forego his constitutional right to remain silent. The Supreme Court of Missouri in *State v. Auger,* 434 S.W.2d 1, 5, 6 (Mo.1968), implicitly advanced and adhered to the above composite principle. In *Auger,* the accused, after being given a "Miranda" warning, declined to sign a waiver of his rights and, by way of explanation, stated "that his attorney had always told him not to sign anything". However, his declination to sign a waiver was followed, "almost immediately", with the statement that "he didn't mind talking about it." A contention identical to the one here advanced by defendant was rejected by the court, and it proceeded to review the attendant facts and circumstances disclosed by the record in order to determine whether the interrogee's refusal to sign the waiver indicated that he had chosen to stand mute. After doing so, the court concluded that the interrogee had voluntarily, knowingly and intelligently waived his right to remain silent and that the confession obtained from him was otherwise free of any taint of coercion or duress. Defendant attempts to distinguish *Auger* from the instant case in two respects: (1) unlike the interrogee in *Auger,* he did not, "almost immediately" following his refusal to sign the waiver, affirmatively state that he "didn't mind talking about it"; and (2) unlike the interrogee in *Auger,* he was interrogated in the early hours of the morning and after a considerable period of time had elapsed following his refusal to sign the waiver. Defendant's first attempt to distinguish this case from *Auger,* to say the least, is superficial. In legal contemplation it is difficult to perceive any practical distinction between the statement made by the interrogee in *Auger* that he "didn't mind talking about it" and the record disclosure here that de-

fendant, almost immediately following his refusal to sign a written waiver, was "willing to talk" to the two interrogating officers and did in fact do so. Defendant's other attempt to distinguish the two cases is unpersuasive. Although defendant made no inculpatory statements until after he counseled with his friend Russell Dupree, the interrogation commenced shortly after his refusal to sign the waiver in view of his willingness to talk. Defendant has failed to produce any authority, and this court knows of none, holding that his interrogation during the early morning hours ipso facto proves that he did not voluntarily waive his right to remain silent. At best, it was but one of a number of factors to be weighed in proper perspective.

Defendant does not contend that he was not advised of his rights per *Miranda.* A reasonable explanation for his refusal to sign the waiver, particularly in view of his almost immediate willingness thereafter to talk to the investigating officers, lies in the oft recognized innate reluctance of people to "put pen to paper".

When all of the circumstances surrounding defendant's custodial interrogation are viewed in their entirety, they stand to support the trial court's admission of defendant's confession—defendant was given the full panoply of rights required by *Miranda,* not only at the outset, but several times during the overall course of his interrogation; he voluntarily, knowingly and intelligently waived his right to remain silent; his waiver of his right to remain silent was not the product of coercion or duress; his right to cut off interrogation was scrupulously honored; and further interrogation thereafter was voluntarily, knowingly and intelligently initiated by him, again absent coercion or duress. The time of defendant's arrest, and the passage of a reasonable amount of time to book and process him, suggest that his interrogation chronologically occurred during the ordinary sequence of events that followed his apprehension. Although his interrogation may at first blush appear to have been somewhat

protracted, it is readily explained by the record in view of defendant's request to cut off further interrogation until he consulted and conferred with his friend, Russell Dupree. At the time, Dupree was working as a security guard for a business concern located some ten blocks from "police headquarters". Dupree had to be located, come to police headquarters, and then afforded an adequate opportunity to consult with defendant. Although never raised by defendant, resumption of the interrogation after he talked with his friend Russell Dupree does not appear to have any constitutionally impermissible overtones in view of the recently decided case of *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

Defendant cites and places great emphasis on *People v. Fioritto*, 68 Cal.2d 714, 68 Cal.Rptr. 817, 441 P.2d 625 (1968), to support his claim that his written confession was extracted after he had invoked his Fifth Amendment right not to incriminate himself. A careful reading of *People v. Fioritto,* supra, discloses that the court, in a decidedly cryptic manner, held that the mere refusal by an interrogee to sign a written waiver of his rights per *Miranda*, regardless of attendant facts and circumstances, was tantamount to a positive invocation of the right to remain silent. Form rather than fact was accentuated. The logic and reason which cut the template in *State v. Auger*, supra, underscores fact as opposed to form. The underlying rationale of *State v. Auger*, supra, also prevails in a number of other jurisdictions. See: *State v. Cashaw*, 4 Wash.App. 243, 480 P.2d 528 (1971); *State v. Carpenter*, 211 Kan. 234, 505 P.2d 753 (1973); *United States v. Hayes*, supra; *United States v. McDaniel,* supra; *United States v. Devall*, 462 F.2d 137 (5th Cir. 1972); *United States v. Biondo*, 483 F.2d 635 (8th Cir. 1973); *United States v. Sawyer*, 504 F.2d 878 (5th Cir. 1974); and *United States v. Reynolds*, 496 F.2d 158 (6th Cir. 1974).

Having concluded that the trial court did not err in admitting defendant's written confession into evidence, attention now turns to the claims of error raised by defendant in his pro se briefs.

■ The verdict rendered by the trial court reads as follows: "So the Court has no hesitation, and does find, the defendant guilty beyond a reasonable doubt of the charge as made in Count III, Assault with Intent to Kill With a Deadly Weapon with Malice." Defendant takes the position that the verdict did not find him guilty of violating Section 559.180, supra, and, therefore, the punishment which the court imposed, being the higher range prescribed by Section 559.180, supra, was unlawful. The crux of defendant's position being that since the word "malice" in the verdict was not followed by the word "aforethought", the trial court, in fact, found him guilty of an offense proscribed by Section 559.190, supra, and the sentence imposed exceeded the permissible maximum range of punishment. Defendant relies on *State v. Mathis*, 427 S.W.2d 450 (Mo.1968), and correctly points out that the court therein distinguished "malice" and "malice aforethought" and held that "malice aforethought", as opposed to "malice", was an essential element of an offense charged under Section 559.180. This court expressly refrains from explicating the finely spun distinction between "malice aforethought" and "malice" because it is unnecessary to do so in order to dispose of this point. *State v. Johnson*, 461 S.W.2d 724, 727 (Mo.1971), is recommended reading for those interested in the legally drawn line of demarcation between "malice aforethought" and "malice" and the subtleties distinguishing them. *Cook v. State*, 511 S.W.2d 877 (Mo.App. 1974), incisively disposes of this point adversely to defendant. In *Cook*, the movant in a Rule 27.26 motion urged that the sentence pronounced upon him (fifteen years) exceeded the maximum permitted by statute, since the following verdict returned by the jury which tried him found him guilty of an offense proscribed by Section 559.190, supra, rather than an offense proscribed by Section 559.180: "We, the jury in the above

entitled cause, find the defendant guilty of Assault with Intent to do Great Bodily Harm with Malice, as charged." The movant, comparable to the tack here taken by defendant, argued that the verdict necessarily had to be construed as finding him guilty of assault with malice and not assault with malice aforethought. The Missouri Court of Appeals, St. Louis District, rejected movant's attack on the verdict. After noting that "the controlling object is to learn the intent of the jury", and in ascertaining the jury's intent their verdict "should be liberally construed" and should not be tested "by technical rules of construction", the court looked at the pleadings and instructions to discover the jury's intent. Since the substituted information under which movant was tried clearly charged him with an assault with malice aforethought and the instructions to the jury posited a verdict of guilty upon a finding by them beyond a reasonable doubt that the assault was committed with malice aforethought, the court held that the verdict returned by the jury should and would be construed as finding movant guilty of an assault in violation of Section 559.180, supra, and, accordingly, the fifteen year sentence imposed was within the permissible maximum statutory range.

This court, in the context of defendant's point, fails to see any valid distinction between a verdict in a jury tried case and a verdict in a court tried case. Count III of the indictment under which defendant was charged and found guilty alleged facts charging him with assault with intent to kill with a deadly weapon with malice aforethought, and, more specifically, referred three times to the assault as having been committed with "malice aforethought" and never once used "malice" alone. The verdict returned by the trial judge found "defendant guilty beyond a reasonable doubt of the charge as made in Count III."

Moreover, the able trial judge, before rendering the controversial verdict, remarked, as a matter of record, that if defendant were being tried by a jury MAI–CR 6.22(b)[4] would be the required and appropriate verdict directing instruction. The verdict which defendant faults does not have to be tortuously construed to arrive at the conclusion that the trial judge intended to and did find defendant guilty of assault within the purview of Section 599.180, supra. Whatever explanation there may be for the inadvertent omission of the word "aforethought" following the word "malice" in the formal verdict, the omission did not render the verdict defective. The verdict is not rife with doubt since it explicitly finds defendant guilty as charged in Count III of the indictment, and the remarks made by the trial judge with reference to MAI–CR 6.22(b) convincingly demonstrate that his use of the term "malice" in the formal verdict had all the connotations of "malice aforethought". For reasons stated, the point just addressed fails to afford defendant any relief.

■ Defendant's contention that his prosecution under Section 559.180, supra, rather then for "attempted murder", violated his constitutionally guaranteed rights of "due process and equal protection" because the maximum punishment prescribed for said offense exceeded the maximum punishment prescribed in paragraph (2) of Section 556.150, supra, the general "attempt" statute, was met and answered adversely to defendant in *Turnbough v. State*, 533 S.W.2d 609, 613 (Mo.App.1975) *appl. to transfer denied March 8, 1976*: "§ 559.180 defines the crime of assault with intent to kill; it does not come within the purview of the attempt statute; it promulgates a distinct crime and is complete in itself."

■ Defendant's remaining contention is twofold—(1) that the trial court improperly

---

4. Which, so far as here pertinent, reads in part: "6.22 Assault with Malice Aforethought . . (b) By other means or force likely to produce death or great bodily harm.

 . . . . .

Third, that the assault was made with malice aforethought—that is, intentionally and without just cause or excuse and after thinking about it beforehand for any length of time, and . . ."

considered the subsequently dismissed charges in fixing his sentence at thirty years confinement, and (2) that said sentence was otherwise excessive. However viewed, it lacks merit. The first aspect of defendant's remaining contention stands unsupported by the record. Moreover, the basic tenet that a trial judge is justified in taking into account the nature and circumstances of the offense for which a defendant has been found guilty when determining and fixing sentence, *State v. Cline*, 452 S.W.2d 190, 195 (Mo.1970) *rev'd on other grounds; State v. Burton*, 355 Mo. 792, 198 S.W.2d 19, 22 (1946), would be substantially eroded if the position advanced by defendant prevails where, as here, it rests on nothing more than mere supposition. The other aspect of defendant's remaining contention, that the sentence imposed was excessive, was met and answered adversely to defendant in *State v. Kennedy*, 513 S.W.2d 697, 701 (Mo.App.1974), where the same argument was made concerning the imposition of a one hundred year sentence upon an accused convicted of violating Section 559.180, supra: "A sentence within statutory limits is not, as a matter of law, excessive or cruel and unusual. *Garrett v. State*, supra [486 S.W.2d 272, 274 (Mo.1974)]. This is particularly so when brutality accompanies the offense, as it does here. A long sentence is appropriate and consequently the punishment imposed was not erroneous. *State v. Agee*, 474 S.W.2d 817[14] (Mo.1971)."

The offense for which defendant was tried, found guilty and sentenced was permeated with brutality to an unconscionable degree. Perforce, the thirty year sentence imposed upon defendant cannot be said to be excessive.

Judgment affirmed.

All concur.