STATE of Missouri,
Plaintiff-Respondent,

v.

David A. GROVES, Defendant-Appellant.

No. 63513.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1983.

Gary L. Gardner, Asst. Public Defender, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Joseph Colagiovanni, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

ROBERT G. DOWD, Special Judge.

Defendant David A. Groves was convicted by jury of the capital murder of Kevin Wilborn in violation of § 565.001 RSMo 1978 and sentenced to life imprisonment without probation or parole for 50 years. § 565.008(1) RSMo 1978. For reversal defendant contends the trial court erred in admitting into evidence his confession to the murder of Wilborn as the state failed to show compliance with the guidelines set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Specifically, defendant argues that one of the officers giving the Miranda warnings omitted the one element advising him that anything he said could and would be used against him, thus rendering the confession in question inadmissible.

Defendant candidly admits this contention was not preserved for appellate review. The record reflects that there was no objection to the introduction before the jury of the confession as involuntary, that no circumstances existed to cause an awareness that counsel was questioning inadmissibility on this ground, and that defendant did not allege the admission of his inculpatory statement as error in his motion for new trial which was untimely filed. However, the constitutional implications of this point argue in favor of looking at it under the auspices of the plain error rule. *State v. Shives,* 601 S.W.2d 22, 28 (Mo.App.1980); *State v. Garrett,* 564 S.W.2d 51, 52 (Mo.App. 1978). As such, the defendant bears the burden of demonstrating that the action of the trial court resulted in manifest injustice or miscarriage of justice. *See State v. Berry,* 609 S.W.2d 948 (Mo. banc 1980); Rule 29.12(b) VAMR. After a review of the record in its entirety we find no such error and affirm the action of the trial court.

On June 15, 1980 defendant went to the trailer home of Hubert Porter and witnessed Porter screaming and threatening to kill the decedent Wilborn. Out of the victim's presence, Porter offered defendant $100.00 to kill Wilborn and supplied him with a .410 gauge shotgun and some shells. Defendant left Porter's trailer with Wilborn, drove around for a few hours and bought him food trying to gain his confidence. Defendant then returned to Porter's residence and informed him he was waiting for the right moment to kill Wilborn. Shortly thereafter the defendant and Wilborn drove across a field to a wooded area. As Wilborn started to set up some beer cans for defendant to shoot at, defendant shot him once and then missed with a second shot. When Wilborn tried to escape, defendant beat him over the head with the butt of the shotgun, causing it to break. Wilborn died from the combined effects of "blood force" injuries to his head with a skull fracture, bleeding in the head, and a brain injury.

Defendant was implicated by Hubert Porter and arrested on June 27, 1980. When he was questioned some 5½ hours later defendant confessed to the crime. He claimed he enjoyed every minute of it and that he did not kill Wilborn for the $100.00 but because he was a "fag". He also informed the police that the broken shotgun Porter had given him was in a paper sack at his mother's house, and that he had wanted to keep it as a souvenir to remind him he had killed somebody. Defendant also drew the police a diagram of his mother's house. The police found the shotgun in question and determined it had fired the two spent shotgun shells found near Wilborn's body. Additionally, forensic evidence introduced at trial placed hair and blood from the victim Wilborn in defendant's auto. At trial defendant denied both killing Wilborn and confessing to the police. However, he did admit to informing the police of the shotgun's location.

The record indicates that the defendant was informed of his *Miranda* rights on two separate occasions. When defendant was arrested he was given his *Miranda* warnings

by a Detective Luckmun while in Detective Miller's presence. The sufficiency of these warnings was never questioned by the defendant. Defendant was again informed of his rights when Detectives Smith and Rogers removed him for questioning from the city jail some 5½ hours later. The following testimony by Detective Floyd Smith[1] reflects the warnings that were given on the second occasion prior to any inculpatory statements by the defendant. It is these warnings which are questioned on appeal.

Q. And tell me what you first did when you contacted David Groves on the morning of June 27, 1980 at 9:00?

A. He was removed from the city jail by myself and Terry Rogers, brought to the second floor, advised of his rights, and informed of why we wanted to talk to him.

Q. When you say he was advised of his rights, would you tell me what you did to advise him of his rights on that occasion?

A. He was advised of his right to have an attorney present, he didn't have to make any statement, and could quit making a statement anytime; he had the right if he couldn't afford an attorney, one would be obtained for him before questioning took place.

Q. Did he say to you that he understood those rights?

A. He did.

Q. Did he ask you at that time if you would provide him with an attorney?

A. He didn't state he didn't want an attorney at that time.

█ This case presents the question of whether the warnings given to defendant prior to interrogation by police officers satisfied the requirements of *Miranda v. Arizona, supra.* Defendant is correct in his assertion that pursuant to *Miranda* a suspect must first, be informed prior to questioning that he has the right to remain silent; second, be warned that anything said can and will be used against the individual in court; third, that the suspect has the right to consult with counsel prior to and to have counsel present during any questioning and; fourth, the suspect must be informed that if he cannot afford to retain a lawyer one will be appointed prior to questioning.

█ It is also true that before a *challenged* inculpatory statement by defendant may be admitted into evidence, the state must show by a preponderance of the evidence its compliance with the *Miranda* guidelines and the voluntariness of the statement. *State v. Olds,* 569 S.W.2d 745, 751 (Mo. banc 1978). However, this principle of law has no application here. The defendant never challenged the sufficiency of the warnings given on either occasion and never requested an evidentiary hearing on the issue. *See State v. Olds, supra; State v. Jackson,* 448 S.W.2d 895 (Mo.1970). Under these circumstances the state was under no obligation to prove its compliance with *Miranda.* Defendant's own failure to raise the issue implies the first warnings were sufficiently in compliance with *Miranda,* that defendant was fully apprised of his rights, and that he freely chose to speak with the police concerning his involvement in Wilborn's murder.

█ Assuming arguendo that the state was under an obligation to prove compliance with *Miranda,* we still believe it carried its burden. Detective Miller testified defendant was first given the *Miranda* warnings upon his arrest by Detective Luckman. As said, defendant at no time questioned the sufficiency of these warnings. Defendant was given his *Miranda* warnings a second time when he was questioned some 5½ hours later. In response to the prosecuting attorney's question concerning the second warnings, it appears Detective Smith did fail to recite the one element advising defendant that any statement made could and would be used as evidence against him in court. This, however, is not conclusive of the defendant's failure to re-

---

1. Detective Miller conducted a car check on defendant's vehicle the morning of the arrest. Detectives Floyd Smith and Terry Rogers were the interviewing officers.

ceive and understand his full rights. As we must assume by defendant's own inaction relative to the warnings that the first warnings alone were sufficient, we can also assume defendant was fully aware of his rights at the time of questioning and that the missing element in the second set of warnings was not fatal. The mere lapse of time between the receipt of *Miranda* warnings and the giving of inculpatory statements does not require the exclusion of the statements. *See State v. Brown,* 601 S.W.2d 311 (Mo.App.1980).

Furthermore, Detective Smith stated the defendant did not object to being interviewed, and freely chose to discuss the murder. As such, the state's failure to produce a signed waiver form precluded neither a subsequent or contemporaneous oral waiver nor rendered his statements inadmissible per se. *State v. Sterling,* 536 S.W.2d 843 (Mo.App.1976); *U.S. v. Zamarrippa,* 544 F.2d 978 (8th Cir.1976) *cert. denied,* 429 U.S. 111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977). It has been repeatedly held that a defendant who refuses to sign a written waiver may nonetheless voluntarily waive the exercise of his *Miranda* rights by orally indicating his willingness to cooperate with the police questioning. *See also U.S. v. Zamarrippa, supra.*

We also fail to find plain error in the trial court's admission of these statements in that the record clearly demonstrates the defendant at no time challenged the admissibility of his statements and never indicated that they were involuntarily given. This being the case, the trial court was under no obligation to call a halt to the trial and sua sponte provide a hearing outside of the hearing of the jury on the issue of involuntariness. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) applies to a *challenged* confession or admission of guilt. *See also State v. Jackson, supra.* The aforementioned testimony by Officers Smith and Miller coupled with the defendant's failure to challenge the admission of these statements, or the state's compliance with *Miranda* on both occasions, could have led the trial court to believe, and

persuades us to believe, that defendant had been fully apprised of his rights and that the state had complied with the guidelines required by *Miranda.* Rather than challenge the voluntariness of the confession and the adequacy of the warnings, the defendant chose to deny having made the confession. Defendant's position is untenable.

When all of the circumstances surrounding defendant's interrogation are viewed in their entirety they stand to support the trial court's admission of defendant's confession. Accordingly, we find no error in the trial court's admission of these statements which would lead us to believe manifest injustice occurred.

Judgment affirmed.

RENDLEN, C.J., WELLIVER, HIGGINS, GUNN and DONNELLY, JJ., and SEILER, Senior Judge, concur.

BILLINGS and BLACKMAR, JJ., not participating because not members of the Court when cause was submitted.