**STATE of Missouri, Respondent,**

v.

**Michael R. BOROTZ, Appellant.**

**No. WD 33,433.**

Missouri Court of Appeals,
Western District.

May 3, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 28, 1983.

Application to Transfer Denied
Aug. 16, 1983.

Fred Duchardt, Public Defender, Peter Schloss (argued), Liberty, for appellant.

John Ashcroft, Atty. Gen. and Kristie Green, Asst. Atty. Gen., Jefferson City, Phil Koppe, Asst. Atty. Gen. (argued), Kansas City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Defendant appeals his conviction by a jury of possession of over thirty-five grams of marijuana, § 195.020 [1], for which he was sentenced to five years imprisonment. He argues that certain questions by the prosecutor impermissibly attempted to use his post-arrest silence against him and that the warrantless search of an attache case found in his car violated his Fourth Amendment right to freedom from unreasonable searches and seizures. We affirm.

On the evening of December 4, 1979, officers McCoy and Soligo of the Kansas City, Missouri, police department were assigned to a surveillance of an apartment in Clay County occupied by Mr. Phillip Broadbent to observe suspected drug activity.

Shortly after the surveillance began at 6:00 p.m., Mr. Broadbent left his apartment with a suitcase and returned shortly carrying that same suitcase and a pillowcase which appeared to contain lumpy, heavy items. Although the testimony of the officers is not completely clear, he apparently

1. All sectional references are to Revised Stat- utes of Missouri, 1978.

went inside and later emerged to put the suitcase into a van parked outside.

Between 8:25 p.m. and 8:45 p.m., three vehicles arrived at the Broadbent apartment. Each time, the driver entered the apartment, Mr. Broadbent emerged within a few minutes to get the suitcase from the van and return to the apartment, and the visitor left within a few minutes. After the first visitor left carrying a "baggy", a small, clear plastic bag, the officers radioed to another car which pursued the visitor at speeds of up to 100 miles per hour. During the chase, an object was thrown from the car, later recovered and identified that same evening as marijuana. The driver was eventually stopped.

The second visitor left the apartment holding something inside his coat. His car was also stopped by police who confiscated marijuana.

Because no other police cars were available in the area, the third visitor got away.

Just after midnight, a dark Chevrolet with Texas license plates arrived occupied by Mr. Borotz and a woman. Together they entered the front door of the apartment. Again, Mr. Broadbent emerged, removed the suitcase from the van and returned to the apartment. Approximately eight minutes later, the defendant and the woman left carrying a dark brown attache case. The officers broadcast a description of the vehicle, its occupants and the attache case. Sgt. Perry stopped defendant's car a few minutes later without a chase. He observed the attache case on the floor of the back seat and directed Mr. Borotz to step out of the car, which he did. The officer then removed the case, opened it and observed a large plastic bag containing a greenish-brown leafy substance. He then arrested the defendant. The substance was later identified as 443 grams of marijuana.

Other than the three officers, the defendant was the only witness at trial. He claimed to have picked up the attache case as a part of his employment with American Limousine Service, which involved delivering misrouted luggage belonging to airline passengers arriving in Kansas City. He

testified that he had been told by his supervisor to pick up the attache case at the Broadbent apartment and to deliver it to the Trans World Airlines baggage department at Kansas City International Airport. According to defendant, he was on his way to the airport with no knowledge of the contents of the case when he was stopped by Officer Perry.

On cross-examination, the prosecutor asked the defendant, "Why is it two years after December 5, 1979, this is the first time we have ever heard of anything about this story?" The court sustained defense counsel's objection to this question and instructed the jury to disregard, but refused to grant a mistrial. Later, on recross, the following exchange occurred:

Prosecutor: Mr. Borotz, you were arrested on December 5, 1979, is that correct?

Defendant: Yes.

Prosecutor: At that time you were advised of your rights, is that correct?

Defendant: Yes.

Prosecutor: When you got to the police station—

The court interrupted the questioning and admonished the prosecutor that he could not pursue this line aimed at the defendant's post-arrest silence.

Prior to trial, defendant had filed a motion to suppress the contents of the attache case. Although no specific ruling on that motion appears in the record, the evidence was introduced at trial over defense counsel's objection.

The jury found the defendant guilty of possession of over thirty-five grams of marijuana and assessed punishment at five years imprisonment.

On appeal, defendant argues: (1) that the prosecutor's question as to why this was the first time he had heard the claim of employment by a baggage delivery service constituted an impermissible attempt to use his post-arrest silence against him; and (2) that the trial court erred in overruling his motion to suppress because the warrantless search of the attache case violated his

Fourth Amendment right to freedom from unreasonable searches and seizures.

Defendant's first point, that the use of his post-arrest silence for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment, was discussed in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). There, the prosecutor asked the defendant whether, immediately following his arrest, he told the arresting agent his version of the facts. The question was presented six times in various forms and each time, the defendant answered "No." The Supreme Court held at 618 that the trial court erred in overruling defense counsel's objection to the questions because the implied assurance of the *Miranda* warning that silence will carry no penalty makes use of silence in impeachment fundamentally unfair.[2]

 This principle was recognized in Missouri long before the *Doyle* decision. Our cases hold, however, that although such questioning is error, a mistrial is *not* the inevitable remedy. Instead, other factors must be considered, specifically, "whether it was defendant or another witness who mentioned his silence, whether the defendant refused or merely failed to make a statement, the degree of emphasis placed on that evidence, its repetition, defense objections thereto and relief requested and the extent of relief granted by the trial court." *State v. Jones,* 532 S.W.2d 772, 774 (Mo.App.1975). In *Jones,* the court found that in sustaining the objection and directing the jury to disregard, the trial court's remedial action was adequate, particularly in light of "the overwhelming weight of the evidence refuting defendant's self-serving testimony."[3]

Although the state court opinion in *Jones* pre-dated *Doyle,* the affirmance of Jones' conviction in light of the remedial action of the trial court is not inconsistent with *Doyle,* in which the trial court specifically overruled defense counsel's objection to the questioning.

Moreover, post-*Doyle* cases in both the state and federal courts have not interpreted that opinion to require a mistrial regardless of the circumstances. For example, in *State v. Brooks,* 567 S.W.2d 348 (Mo.App. 1978), the prosecutor asked defendant, "What I want to know, Oscar, is why the Prosecuting Attorney, myself, who was handling this case from its inception from June 14, 1975, why it was January 20, 1976, before I ever heard anything about this alibi of yours?" The trial court sustained defense counsel's objection and instructed the jury to disregard the question. On appeal, the *Brooks* court cited *State v. Smith,* 431 S.W.2d 74, 84 (Mo.1968), for the rule that mistrial "is a most drastic remedy and should be resorted to only when the incident is so grievous that the prejudicial effects can be removed no other way." Observing that the trial court was in the best position to judge the prejudicial effect of denying a mistrial, the court held at 353 that, "We cannot say as a matter of law that the remedial action taken by the trial court was *not* sufficient in the circumstances, or that the trial court abused its discretion in not declaring a mistrial."

Similarly, in *State v. Walker,* 617 S.W.2d 94 (Mo.App.1981), the prosecutor's question left an inference that the defendant was silent at the time of his arrest as to the source of money he was accused of having taken from a gas station attendant. Nevertheless, because the overwhelming weight

2. We note that recently in *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Supreme Court limited the *Doyle* holding to cases where the *Miranda* warning was actually given. As the Court said at 607, 102 S.Ct. at 1312, "In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." Here, neither party disputes that defendant was given a *Miranda* warning.

3. Both the trial court's remedial actions and the overwhelming weight of the evidence were considered by the federal court of appeals in denying the same defendant's petition for writ of habeas corpus in *Jones v. Wyrick,* 542 F.2d 1013 (8th Cir.1976), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1603, 51 L.Ed.2d 807 (1977), decided four months after *Doyle.*

of the evidence was against the defendant, because defendant was not questioned directly about the events at the time of the arrest, and because the implication was not repeated, the court in *Walker* held that a mistrial was not warranted.

In *Williams v. Zahradnick,* 632 F.2d 353, 361–62 (4th Cir.1980), the court identified five factors which must be weighed where *Doyle* error has occurred:

1. The use to which the prosecution puts the post-arrest silence.

2. Who elected to pursue the line of questioning.

3. The quantum of other evidence indicative of guilt.

4. The intensity and frequency of the reference.

5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

In considering such factors here, we note that, although the use to which the prosecutor put the post-arrest silence was impeachment, the other evidence indicating defendant's guilt was substantial, refuted only by defendant's story of employment by a baggage delivery service. That story remained uncorroborated by his companion (said to have been aware of the facts and, in fact, a baggage claim employee herself), by his alleged employer, or by Mr. Broadbent himself. Further, the question not only was asked only once (the second exchange on recross never having actually reached the question of defendant's silence), it never amounted to a direct questioning as to post-arrest events or silence following a *Miranda* warning, but remained only a suggestion. Most important, the curative instructions here provided adequate remedy.

Finally, the two Missouri post-*Doyle* opinions brought to our attention reversing a conviction on the basis of impermissible questioning as to post-arrest silence are distinguishable. They involve either an objection overruled at the trial court level, *State v. Roth,* 549 S.W.2d 652, 654 (Mo.App.1977), or an instruction to the jury to disregard which improperly emphasized the question by repeating both it and the answer, thus indelibly stamping defendant's statement on the jury's mind. *State v. Givan,* 573 S.W.2d 104, 106 (Mo.App.1978). No such repetition occurred here after the trial court sustained the objection.

We must conclude that, although the prosecutor's questions flirted with the impermissible area of post-arrest silence, the circumstances in this case render the error, if any, not prejudicial.

Defendant's second point is that the trial court erred in overruling his motion to suppress the contents of the attache case because the warrantless search violated his Fourth Amendment rights.

The Fourth Amendment to the U.S. Constitution establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Although the Supreme Court has held that a warrantless search is *per se* unreasonable, certain "specially established and well delineated exceptions" have been recognized, *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), among them, the so-called "automobile exception." This exception as recognized in *Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925), is primarily based on the mobility of automobiles which makes a delay during which a warrant is secured impractical as allowing time to move the vehicle beyond the reach of the warrant.

In two recent opinions, however, the Supreme Court declined to extend the rationale justifying warrantless automobile searches to movable containers located within a car and believed to be carrying a controlled substance.

In *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), federal officials had probable cause to believe that a 200-pound footlocker arriving by train in Boston contained a large quantity of marijuana. The agents observed the defendant as he picked up the footlocker and placed it in the trunk of his automobile. The locker was immediately seized and subsequently searched without a warrant. The search of

that locker was held to be unjustified as violating the general principle that closed packages and containers may not be searched without a warrant.

Similarly, in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the defendant arrived at the Little Rock airport carrying a suitcase which the police had probable cause to believe contained marijuana. He was observed putting the suitcase in the trunk of a taxi and was stopped within several blocks of the airport. The trunk was later searched without a warrant. The Court found the search invalid and broadly stated at 766, 99 S.Ct. at 2594 that "the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations."

Both of these opinions were discussed in Justice Stewart's plurality opinion in *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), which relied on the rule that a closed piece of luggage found in a car is as constitutionally protected as luggage found elsewhere. There, the defendant had been stopped for driving erratically. Noticing the smell of marijuana smoke, the police searched both the passenger and the luggage compartments, finding two wrapped packages in the latter. The packages were opened and searched without a warrant, revealing fifteen pounds of marijuana. A plurality of the Court held at 428, 101 S.Ct. at 2846 that the search violated the Fourth Amendment and that a closed, opaque container may not be opened without a warrant, even if it is found during the course of the lawful search of an automobile.

Recognizing the confusion created by the absence of a majority opinion in *Robbins*

and "the importance of striving for clarification in this area of the law," the Court again addressed the troublesome area of warrantless searches of containers within automobiles in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). There, responding to a tip from an informant that the defendant was selling narcotics from the trunk of a car at a certain location, police searched packages found in the trunk of that car without a warrant. The Court found the search to be within the automobile exception and specifically overruled *Robbins* as well as "the portion of the opinion in *Arkansas v. Sanders*, on which the plurality in *Robbins* relied." Although Justice Stevens, writing for the majority, acknowledged that "[p]robable cause to believe that a container placed in the trunk of a [car] contains contraband or evidence does not justify a search of the entire [car]," the Court held that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."

The question is, then, whether probable cause existed to search the vehicle as in *Ross* or simply to search the attache case alone, as in *Chadwick* and *Sanders*.[4] If the former, the warrantless search of all containers within the car was justified. If the latter, it was not.

■ We hold that, on the facts of this case, probable cause did exist to search the passenger compartment of the vehicle itself. Defendant's behavior conformed to the pattern of earlier visitors who were found to possess marijuana after leaving the apartment of a suspected drug dealer and thus, probable cause existed to believe that he was carrying a controlled substance

4. *Ross* notwithstanding, *Chadwick* and *Sanders* are still very much alive. *Ross* did not overrule either *Chadwick* or the holding in *Sanders* and, in fact, noted with approval the concurring opinion by Chief Justice Burger in *Sanders* which relied on *Chadwick* and stated at 442 U.S. at 767, 99 S.Ct. at 2595 that "[t]he fact that the suitcase was resting in the trunk of the automobile at the time of respondent's arrest does not turn this into an 'automobile' exception case. The Court need say no more." Evidently, the Court did not intend to overrule the pre-*Ross* rule that a specified container believed to contain contraband or evidence placed in a trunk of an automobile is not the proper subject of a warrantless search merely because of its location in an automobile.

as he left the apartment, either on his person or in the attache case. On entering the car immediately after leaving the apartment, he, in effect, tainted the interior and extended probable cause to any area within his reach. These facts distinguish this case from *Chadwick* and *Sanders* first, because in those two cases probable cause existed only to believe that contraband could be found in a specified container, not on the person of the defendant. Second, the containers in those cases were placed directly into the trunk of the vehicles, thus limiting probable cause to that area and precluding search of the passenger compartment.

Accordingly, we find that probable cause existed to justify the search of the defendant's vehicle and that, therefore, following the dictates of *Ross,* the search of the passenger compartment of the vehicle and its contents—including the attache case—was justified.

For the foregoing reasons, we affirm the defendant's conviction.

All concur.