STATE of Missouri, Respondent,

v.

Kenneth OUTLEY, Appellant.

No. WD 35437.

Missouri Court of Appeals,
Western District.

April 30, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 2, 1985.

Application to Transfer Denied Aug. 7, 1985.

James W. Fletcher, Public Defender, Sean D. O'Brien, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, J., Presiding, and SHANGLER and DIXON, JJ.

PER CURIAM:

Outley was convicted of second degree murder, Section 569.030 RSMo 1978, and sentenced to fifteen years imprisonment, pursuant to Section 565.008.2. He appeals, asserting the trial court erred in (1) overruling his motion to suppress and his objections regarding statements he had made to the police; (2) permitting questions and argument about his failure to explain certain incriminating evidence; (3) overruling his motion for a mistrial when a police officer was asked if Outley had refused to make a videotaped statement; and (4) submitting Instruction 12, which was based on MAI–CR2d 2.12, the accomplice liability instruction. Affirmed.

Outley accompanied a friend, Clifford Pearson, to the home of Jack Seese, a man from whom Pearson wanted money. Seese allowed the two men to enter his home but, when Pearson requested the money, he did not produce it. Pearson then took out a gun and, according to Outley's trial testimony, pistol-whipped Seese. Also according to Outley's trial testimony, Outley went into the kitchen for a rag to staunch Seese's bleeding cuts. In Outley's earlier statement to the police, he stated that, when Pearson produced the gun, Outley had said, "Hey, man, I'm not ready for all this. Put your gun away," had run out of the apartment, but then had returned and had told Pearson not to do anything to Seese. Outley said he left the apartment

again and heard a gunshot. After a conversation with Pearson about Outley's having "chickened out," another shot sounded. The police found Seese in the bathroom of his apartment in a pool of blood. There was also a small spattering of blood in the dining room, and a bloody footprint, which precisely matched Outley's tennis shoes, was found on the kitchen floor.

In Outley's statement to the police, he said he and Pearson had driven to Oklahoma City in Seese's car, using Seese's credit card, had there visited female friends of Pearson's, and had then returned to Kansas City. At trial, Outley emphasized the truth of his prior statement, but added that he had gone with Pearson because Pearson had threatened him with a gun and he feared Pearson might think he would "snitch" if he did not accompany him. Upon returning to Kansas City, Outley turned himself in and was interrogated by the police. He was given the *Miranda* warnings and stated he understood them, but refused to sign the rights waiver form. He then agreed to speak to the police. At the suppression hearing, the police testified no promises or threats were made to Outley. After giving his statement, Outley was asked if his statement could be videotaped. He refused and requested an attorney. Thereafter, all questioning ceased.

At trial, the prosecutor cross-examined Outley and later argued about the differences between Outley's statement to the police and Outley's trial testimony, specifically referring to Outley's failure, in his initial exculpatory statement, to mention the pistol-whipping sequence, to give an explanation of the bloody footprint, and to tell his motivation for accompanying Pearson to Oklahoma. The prosecutor also asked the police whether Outley had changed his mind about making a videotaped statement. Before the officer answered, defense counsel's objection, based on a violation of the right against self-incrimination and post-arrest silence, was sustained, and the jury was instructed to disregard. The court did not, however, grant Outley's motion for a mistrial.

■ Outley first asserts the court erred in overruling his motion to suppress the statement he had made to the police. He theorizes that, because, prior to the interrogation, he was told he would give up his rights if he signed the rights waiver form, which he then refused to sign, and the police did not request clarification of his motivation, his later statement was taken in violation of his Fifth and Sixth Amendment rights. In light of all of the circumstances surrounding the interrogation, Outley's refusal to sign the waiver form did not show an unwillingness to give up his right to remain silent and his right to counsel. *State v. Clark*, 552 S.W.2d 256, 262 (Mo.App.1977). The principle is well-established that "a defendant who refuses to sign a written waiver may nonetheless voluntarily waive the exercise of his *Miranda* rights by orally indicating his willingness to cooperate with the police questioning." *State v. Groves*, 646 S.W.2d 82, 85 (Mo. banc 1983); *State v. Auger*, 434 S.W.2d 1, 5–6 (Mo.1968); *State v. Hull*, 595 S.W.2d 49, 51–52 (Mo.App.1980); *see also, Martin v. United States*, 691 F.2d 1235 (8th Cir. 1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). Outley was given the *Miranda* warnings and stated that he understood them. He refused to sign the waiver form but, after stating that he understood his rights, agreed to give a statement concerning the Seese homicide. There was no evidence that any coercive actions were taken by the police. Only after having given his statement, when asked to make a videotaped statement, did Outley request an attorney. At that point, all questioning ceased. Outley voluntarily waived his *Miranda* rights and his statement and the evidence connected therewith were thus properly admitted.

■ Outley next asserts the trial court plainly erred when it allowed the prosecutor to argue and elicit testimony about Outley's failure to explain certain evidence (the bloody footprint, the pistol-whipping, and the trip to Oklahoma) to the police. Defense counsel did not object to this line of questioning and argument at trial, and

the point is reviewed as plain error. Rule 84.13(c).

■ Outley contends the state violated the rule that "it may not be shown that by his silence [the accused] failed to deny or explain while under arrest an incriminating fact as to which no question was asked." *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. banc 1970); *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *U.S. v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *State v. Dodson*, 595 S.W.2d 59, 61 (Mo.App.1980). *Stuart, supra,* undoubtedly states the general rule, and it and the other cases cited by Outley (*Doyle v. Ohio, supra; U.S. v. Hale, supra; State v. Roth*, 549 S.W.2d 652 (Mo. App.1977); *State v. Foley*, 144 Mo. 600, 46 S.W. 733 (1898); *State v. Elmore*, 467 S.W.2d 915 (Mo.1971); *State v. Butler*, 512 S.W.2d 466 (Mo.App.1974)) are cases where, prior to trial, the defendant remained silent. The rationale for excluding reference to such silences is that, because of the exercise of *Miranda* rights, "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." *Doyle v. Ohio, supra,* 426 U.S. at 617, 96 S.Ct. at 2244. Outley did not remain silent but instead voluntarily waived his *Miranda* rights and made a statement to the police, which, at trial, he admitted to have been truthful. The general rule as set forth by the *Stuart* court is inapplicable. *State v. Harris*, 547 S.W.2d 473 (Mo. banc 1977); *State v. Van Doren*, 657 S.W.2d 708, 716 (Mo.App.1983); *State v. Trice*, 575 S.W.2d 739, 742 (Mo.App.1978). Outley's trial testimony adhered in large part to the statement he made to the police. However, significant additions to his statement to the police were that: (1) Pearson had pistol-whipped Seese; (2) Outley had gotten a rag from the kitchen to staunch Seese's bleeding cuts; and (3) Pearson had forced Outley, at gunpoint, to accompany him to Oklahoma. This additional testimony was apparently given after the incriminating bloody footprint the police had found in Seese's kitchen was first disclosed to Outley. The state then argued the obvious inference that the later statements were an attempt to avoid the implication of the bloody footprint. The argument addresses what Outley said to the police, not his silence. The prosecutor properly argued this notion as bearing on Outley's credibility. *State v. Wren*, 643 S.W.2d 800, 802 (Mo.1983), and the court did not plainly err in permitting such argument and questioning.

■ Outley also asserts the trial court erred in overruling his motion for a mistrial, which was based on a question to a police officer about Outley's decision not to allow his statement to be videotaped. Outley contends his Fifth Amendment and Article I, Sec. 18(a) privilege against self-incrimination was violated, as the question amounted to commentary on his post-arrest silence. The officer, without objection, testified Outley had consented to a videotaped statement. He was then asked if Outley changed his mind. The latter question was objected to and the court sustained the objection and directed the jury to disregard, but denied a mistrial.

The court did not abuse its discretion in failing to grant a mistrial based on this exchange. This was the only such question ever asked and the court, while it did not grant the drastic remedy of a mistrial, took curative action and instructed the jury to disregard. The analysis is much like that in *State v. Borotz*, 654 S.W.2d 111 (Mo. App.1983). Here, the question the prosecutor asked was never repeated, and it does not appear from the record that it was ever answered. The question did not refer to Outley's silence, as he did not remain silent. The question merely referred to his decision, after making an oral statement to the police, to not consent to a videotape. Further, the question did not mention Outley's later, post-statement request for an attorney. At most, the question may have *"flirted* with the impermissible area of post-arrest silence," *Id.* at 115 (*Emphasis added* ), but, distinct from *Borotz*, there was no direct reference to any assertion of Outley's rights. As in *Borotz*, "[m]ost im-

portant, the curative instructions here provided adequate remedy." *Id.* at 115. The trial court did not abuse its discretion in failing to grant a mistrial in this case. *State v. Borotz,* 654 S.W.2d 111, 114 (Mo.App.1983); *State v. Sitzes,* 639 S.W.2d 404, 406 (Mo.App.1982).

■ Outley last asserts the court erred in giving Instruction No. 12, because, he alleges, it omits a material element of the offense, *i.e.,* that the defendant's aid and encouragement must be given before or during the commission of the offense.

The parties agree that Instruction No. 12 was patterned after MAI–CR2d 2.12. By his assertion, Outley essentially challenges the validity of MAI–CR2d 2.12. As a general principle, "if an applicable criminal instruction is provided by MAI–CR2d, it is mandatory that the court give the instruction, as written." *State v. Moore,* 615 S.W.2d 108, 109 (Mo.App.1981). Further, "this court has no authority to declare erroneous those instruction forms and their accompanying Notes on Use which have been adopted for standard use by the Supreme Court." *State v. Dixon,* 655 S.W.2d 547, 560 (Mo.App.1983); *State v. Mee,* 643 S.W.2d 601 (Mo.App.1982).

MAI–CR2d 2.12, as stated in Instruction No. 12, sufficiently defines the time frame for which Outley's aid and encouragement could be considered by the jury and there was sufficient evidence upon which the instruction could be submitted. The instruction focuses the jury's attention on the defendant's actions before and during the commission of the offense by the use, throughout the instruction, of the verb form, "committing." That the instructions only refer to that time frame becomes more apparent by Instruction No. 6, which states, "The presence of a person at or near the scene of an offense *at the time it was committed* is alone not sufficient to make him criminally responsible for the offense, although his presence may be considered together with all of the evidence in determining his guilt or innocence." (*Emphasis added*). Furthermore, there was evidence from which the jury could find Outley was in the apartment before and when Pearson killed Seese. The prosecutor's argument focused upon the notion that only Outley's presence when Seese was killed would explain the bloody footprint found in the kitchen.

Contrary to Outley's contention, the holding in *State v. Schleicher,* 458 S.W.2d 351 (Mo. banc 1970), is directly applicable to this case. In *Schleicher,* the defendant's liability was premised upon his possession of stolen property after the offense had been committed. Schleicher asserted the court erred in giving a joint participant instruction, which failed to include the phrase "before or during the commission thereof." He contended the instruction thus failed to distinguish between an accessory to the crime and an accessory after the fact. In response to Schleicher's argument, the court stated, "The instruction here speaks of aid in the commission of the crime, not aid in the escape, and is not subject to the objection raised. It adequately requires presence and assistance in the criminal act itself, and is limited to activity for which Section 556.170 makes the actor liable as a principal." *Schleicher, supra,* 458 S.W.2d at 355. Because here, as in *Schleicher,* the instruction correctly stated that the defendant could only be held liable if he rendered aid and encouragement "before or during the commission of the offense," the phrase itself was unnecessary and, because this was a pattern approved instruction, the trial court would have erred if it had attempted a modification. Affirmed.