**STATE of Missouri, Respondent,**

v.

**John FRENTZEL, Appellant.**

**No. WD 38325.**

Missouri Court of Appeals,
Western District.

April 7, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1987.

Dennis D. Gooden, Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, C.J., and TURNAGE and NUGENT, JJ.

NUGENT, Judge.

John Frentzel appeals his conviction by a jury of burglary in the second degree. He claims that the trial court should have suppressed a confession he made after he had refused to waive his constitutional rights because the interrogating officers did not scrupulously honor his right to cut off questioning. Second, he argues that his confession—the only evidence linking him to the crime—was not admissible absent separate, independent proof of the corpus delicti.

For the following reasons, we affirm the judgment of the trial court.

On July 2, 1985, a correctional officer at the Algoa Correctional Center discovered a hole in the ceiling of the meeting room in the chapel building. He also noticed scuff marks on the wall and footprints on the chairs. Upon removing a blanket that had been draped over a podium in the meeting room, the prison investigators found loot valued at about $688, including stereo cassette players, fans, cigarettes, and candy bars, all taken from the adjacent inmate canteen, a separate room in the chapel complex. When the business manager un-

locked the canteen door, the investigators saw a hole in that ceiling and a shelf unit that had been overturned.

Later that day, another correctional officer who was not officially a part of the investigative team noticed that the defendant had fresh scratch marks on his back and arms and questioned him about the break-in. The record does not disclose what was said at that time. However, pictures of the scratch marks were admitted at trial, and the record hints that the defendant may have acquired the scratch marks earlier while playing baseball without wearing a shirt.

About two weeks later, on July 15, three investigators questioned Mr. Frentzel in the prison investigator's office. One of the investigators, Mr. Clark, read the defendant Frentzel his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), from the standard form used at Algoa at the time. After each right was read, Mr. Clark stopped and asked Mr. Frentzel whether he understood that right. If so, he was to place his initials in the left column of the form. The defendant initialed all the rights listed on the form and also initialed the final question, "Do you understand each of these rights?" Then he signed and dated the form but refused to sign the attached *Miranda* waiver form.

When Mr. Frentzel refused to sign the waiver of rights, the investigators informed him that they could not talk to him and that he was free to go. At that point, he asked the investigators if he could stay and talk with them concerning another topic. He proceeded to assure the officers that two other inmates under investigation had nothing to do with the break-in. One of the investigators remarked that the ceiling of the meeting room was so high that it did not seem possible for one man climbing on stacked chairs to have reached it without help from a second person. Mr. Frentzel then said, "I did set a bench up and crawled up the church pew into the hole." When asked if he realized what he had just said, he said, "Oops." Then he said, "I might as well go ahead and tell you about

it." He explained how he had crawled up a church pew into the attic of the chapel and had gone through a hole in the attic to the canteen. He told the investigators that a shelf inside the canteen had collapsed and that he carried some of the inventory into the attic and then to the chapel.

On July 31, 1985, the adjustment board held a hearing in order to determine whether to prosecute Mr. Frentzel. They again advised him of his rights and again he acknowledged his understanding of those rights by initialing the form. This time, he also signed the waiver of rights. Again he admitted taking the items from the canteen. The adjustment board recommended prosecution.

## I.

■ Defendant Frentzel contends that his July 15 confession was obtained in violation of his constitutional rights and, therefore, was not admissible at trial. He claims that immediately after he had invoked his right to remain silent about the burglary the investigators turned the conversation back to the canteen break-in in an attempt to elicit an incriminating response.

The defendant relies upon *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), which states that the test of admissibility of incriminating statements obtained after a person in custody has decided initially to remain silent is whether his right to cut off questioning was scrupulously honored.

In the present case, the officers informed the defendant that because he had refused to waive his rights they would not question him and he was free to go. They undertook no interrogation at that point. The defendant then asked if he could talk to the investigators about "something else." He initiated the ensuing discussion in an attempt to exonerate two fellow inmates. The record contains no evidence that the investigators in any way attempted to persuade or coerce the defendant to continue or to reopen the encounter with the investigators.

This is not a case in which defendant's interrogators failed to honor his decision to

remain silent. The investigators scrupulously honored his wish not to be questioned.

■ Defendant having by his own choice extended the confrontation with the prison investigators, the question then becomes whether any statement he made in that context was voluntarily made and, therefore, admissible in evidence against him. "[A] defendant who refuses to sign a written waiver may nonetheless voluntarily waive the exercise of his *Miranda* rights by orally indicating his willingness to cooperate with police questioning." *State v. Groves*, 646 S.W.2d 82, 85 (Mo.1983) (en banc). *See also State v. Outley*, 693 S.W.2d 184, 186 (Mo.App.1985). The test of voluntariness is whether under the totality of the circumstances the defendant was deprived of a free choice to admit, to deny or to refuse to answer and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed. *State v. Lytle*, 715 S.W.2d 910, 915 (Mo.1986) (en banc); *State v. Higgins*, 592 S.W.2d 151, 158 (Mo. 1979) (en banc), *appeal dismissed*, 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980).

■ In the present case, the defendant was advised of his *Miranda* rights, signed a form indicating that he understood those rights and then declined to sign the waiver form. The investigators immediately excused him, but he himself by his request to discuss "something else" extended the encounter. He did not discuss "something else." Instead, he attempted to exonerate his fellow inmates of any part in the burglary. Nothing in the record indicates that defendant was tricked, cajoled, or physically or psychologically coerced into making any statement. Once he admitted that he had used a church pew to climb up to the ceiling, he realized that he had incriminated himself and then decided without prompting to confess the remaining details of the burglary.

■ With regard to a second interrogation, the *Miranda* warnings need not be given each time the accused is questioned. *Miller v. United States*, 396 F.2d 492 (8th Cir.1968), *cert. denied*, 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969); *State v. Woodward*, 587 S.W.2d 287, 289 (Mo.App. 1979). Moreover, in light of all the circumstances surrounding the interrogation, the defendant's refusal to sign the waiver form did not show an unwillingness to give up his constitutional rights. *Outley, supra*, 693 S.W.2d at 186 citing, *inter alia*, *Groves, supra*, 646 S.W.2d at 85 (defendant who refuses to sign a written waiver still may voluntarily waive the exercise of his *Miranda* rights by orally indicating his willingness to cooperate). *See also State v. Harris*, 670 S.W.2d 526, 528 (Mo.App. 1984).

The evidence is sufficient to sustain the trial court's finding that defendant's confession was voluntary. The court did not err in admitting the confession into evidence.

## II.

Defendant next claims that his confession was not admissible in evidence absent separate, independent proof of the corpus delicti. He argues that the state produced no evidence linking him to the burglary other than the confession. The defendant seems to suggest that his conviction turned on the evidence of scratch marks linking him to the crime and that the evidence was insufficient in that he could have received the marks playing baseball.

■ Defendant misconstrues the corpus delicti rule. Extrajudicial admissions, statements or confessions of the accused are not admissible in evidence absent independent proof, either circumstantial or direct, of the essential elements of the corpus delicti. *State v. Johnston*, 670 S.W.2d 552, 554 (Mo.App.1984), citing *State v. Summers*, 362 S.W.2d 537, 542 (Mo.1962), and *State v. Cooper*, 358 Mo. 269, 214 S.W.2d 19, 20 (1948). However, proof of the corpus delicti need not include proof of the defendant's connection with the crime charged. *Id.*, citing *State v. Wood*, 596 S.W.2d 394, 402 (Mo.1980) (en banc), *cert. denied*, 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). In other words, proof of the criminal agency of the defendant is not

required as part of the corpus delicti before admitting his confession into evidence. *Id.,* citing *State v. Worley,* 375 S.W.2d 44, 46 (Mo.1964). The corpus delicti rule simply requires the state to show that the crime charged has been committed by someone. *State v. Black,* 611 S.W.2d 236, 240 (Mo. App.1980), citing *Summers, supra,* 362 S.W.2d at 542. The corpus delicti consists of two elements: (1) proof, direct or circumstantial, that the specific loss or injury occurred, and (2) someone's criminality as the cause of the loss of injury. *Johnston, supra,* 670 S.W.2d at 554, citing *Worley, supra,* 375 S.W.2d at 46; *State v. Hawkins,* 165 S.W.2d 644, 646 (Mo.1942); *State v. Summers,* 506 S.W.2d 67, 71 (Mo.App. 1974), and *State v. Celmars,* 399 S.W.2d 145, 147 (Mo.App.1966).

*State v. Easley,* 515 S.W.2d 600, 602 (Mo.App.1974), holds that evidence of the corpus delicti need not precede the defendant's admission so long as the essential elements of the crime are proved by the end of trial. Moreover, full proof of the corpus delicti need not be independent of the admission. "[P]roof of the corpus delicti and the admission can be considered together and the sum of the two can go to prove the essential elements of the crime." *Id.,* citing *State v. McQuinn,* 361 Mo. 631, 235 S.W.2d 396, 397 (1951).

The corpus delicti of the offense with which defendant was charged requires proof that someone knowingly and unlawfully entered or knowingly and unlawfully remained in a building or inhabitable structure for the purpose of committing a crime inside. § 569.170 R.S.Mo. (1978). In this case, the state presented ample proof independent of defendant's confession that someone had committed burglary by way of evidence of a hole in the ceiling of the meeting room, a second hole in the ceiling of the canteen, and evidence that the canteen was locked at the time the incident occurred, that a shelf inside the canteen was overturned, and that various items stolen from the canteen were found stuffed in a podium in the chapel.

Regarding defendant's challenge to the sufficiency of the evidence, while evidence of a defendant's scratch marks may be considered circumstantial evidence of defendant's criminal agency, proof of the corpus delicti coupled with the defendant's confession sufficed to support the conviction.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.